RADTKE HEATING AND SHEET METAL CO., INC., Appellant,

v.

STATE BANK OF CHERRY, et al., Appellee,

UNITED STATES of America, INTERNAL REVENUE SERVICE, Appellant,

v.

RADTKE HEATING AND SHEET METAL CO., INC., Appellee.

Nos. 88 C 7687, 88 C 7688.

United States District Court, N.D. Illinois, E.D.

Aug. 25, 1989.

See also, D.C., 95 B.R. 84.

Kenneth A. Kozel, Petz & Kozel, LaSalle, for Radtke Heating and Sheet Metal Co.

Anton R. Valukas, U.S. Atty., Chicago Ill., for Internal Revenue Service.

John Balestri, Bernabei & Balestri, Spring Valley, Ill., for State Bank of Cherry.

Joseph Cammarata, Trial Atty., Tax Division, U.S. Department of Justice, Washington, D.C., for District Director of I.R.S.

Robert Radasevich, Neal Gerber Eisenberg & Lurie, Chicago, Ill., for B.F. Goodrich Co., Inc.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

These cases involve appeals from orders entered on July 8 and 15, 1988 by Bankruptcy Judge Eugene R. Wedoff in the adversary proceeding entitled *Radtke Heating and Sheet Metal Co., Inc. v.* *Schneider, Inc., et al.*, No. 86 C 1098. These orders concerned a "Complaint for Interpleader and Declaratory Relief" filed by Radtke Heating and Sheet Metal Co., Inc. ("Radtke"), the debtor in a Chapter 11 bankruptcy proceeding, No. 86 B 11749. For the following reasons, the decision of the bankruptcy court is affirmed.

### FACTS

On January 20, 1986 Radtke entered into a written subcontract with Schneider, Inc. ("Schneider"). The subcontract obligated Radtke to perform ventilation work on the Henry Accelerator Facility of B.F. Goodrich Company, Inc. The subcontract obligated Schneider to make monthly payments to Radtke in an amount equal to 90% of the value of the work performed by Radtke in the previous month. Schneider was to pay the additional ten percent within 30 days after Radtke completed and Schneider accepted the work, "provided that [Radtke] shall have paid in full all bills for labor and materials...." (Subcontract Agreement, Exhibit 1 to Stipulation of Facts (Bankruptcy Document No. 17), ¶ 1). The original amount of the contract was $89,774.00; however, by the time Radtke completed all work under the subcontract, nine change orders had increased the amount of the contract to $92,825.15.

On May 30, 1986, the Internal Revenue Service ("IRS") filed with Schneider a Notice of Federal Tax Lien against Radtke in the amount of $46,857.54. In addition, several sub-subcontractors claimed a right to a portion of the sum owed to Radtke by Schneider. ("Complaint for Interpleader," ¶ 4). Because of these claims, Schneider discontinued making progress payments to Radtke under the subcontract. On July 31, 1986, Radtke filed its Chapter 11 petition.

Soon after filing the Chapter 11 petition, Radtke filed a motion in the bankruptcy court through its attorney, Kenneth A. Kozel, seeking to set aside the liens against the payments Schneider owed to Radtke under the subcontract. Bankruptcy Judge Eisen rejected Radtke's motion and directed Radtke to file an interpleader action in the bankruptcy court. Radtke's subsequent "Complaint for Interpleader" re-

quested Schneider to deposit with the clerk of the court the money it owed to Radtke and beseeched the court to determine the rights of the various claimants to the funds. On February 19, 1987, Judge Eisen granted Radtke's motion for partial summary judgment and ordered Schneider to turn over $35,460.05. In addition, on July 23, 1987, Judge Eisen granted Radtke's motion for pre-judgment interest of $1,321.25 and post-judgment interest of $218.59. Mr. Kozel deposited all amounts received from Schneider in an interest-bearing account.

Four parties asserted claims against the fund. Radtke claimed a primary interest in the fund. The IRS claimed a portion of the fund to satisfy its tax lien. *See* Section 6323(c) of the Internal Revenue Code, 26 U.S.C. § 6323(c) (1986). The State Bank of Cherry (the "Bank") claimed a right to the entire proceeds of the fund to satisfy its security interest in Radtke's accounts receivable (perfected January 13, 1983). Finally, Mr. Kozel requested attorney's fees and costs pursuant to Section 506(c) of the Bankruptcy Code, 11 U.S.C. § 506(c).

Bankruptcy Judge Wedoff[1] issued an order apportioning the fund among the parties on July 8, 1988. Judge Wedoff rejected Radtke's claim to a portion of the funds. Mr. Kozel received $5,930.00, representing 59.30 hours at $100.00 per hour, plus costs in the amount of $372.10. The IRS received $8,977.40, the amount of the ten percent retainage. The Bank received $26,482.65 in satisfaction of its claim. Because the sum of the shares exceeded the amount of the fund, Judge Wedoff ruled that the Bank's share and the portion of the fund taken by the IRS would be reduced proportionally to compensate Mr. Kozel. In other words, Judge Wedoff permitted Mr. Kozel a priority interest in the funds. Judge Wedoff issued a second order on July 15, 1988 apportioning the interest earned on the account among the parties.

Three appeals to this court resulted from Judge Wedoff's orders. Radtke claimed that Judge Wedoff erred by awarding any portion of the fund to either the IRS or the Bank and asserted that it is entitled to additional attorney's fees. *Radtke Heating and Sheet Metal Co., Inc. v. State Bank of Cherry*, No. 88–7687 (assigned to this court). The United States challenged Judge Wedoff's award to Mr. Kozel and the propriety of reducing the United States' award to pay the debtor's attorney's fees. *United States v. Radtke Heating and Sheet Metal Co., Inc.*, No. 88–7688 (originally assigned to Judge Kocoras and related to Case No. 88–7687 by order of this court dated March 23, 1989). The third appeal, *Kozel v. State Bank of Cherry, et al.*, No. 88–7685, was originally assigned to Judge Bua and is now closed.

## DISCUSSION

When a district court reviews a decision of the bankruptcy court, the district court may accept the bankruptcy court's findings of fact unless they are clearly erroneous. *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985); *Matter of Evanston Motor Co., Inc.*, 735 F.2d 1029, 1031 (7th Cir.1984); *In re Sanabria*, 52 B.R. 75, 65 (Bkrtcy.N.D.Ill.1985); Bankruptcy Rule 8013. The party who seeks reversal of the findings of the bankruptcy court has the burden of showing that the findings were clearly erroneous and not merely that the bankruptcy court could have reached another conclusion. *In re Soucek*, 50 B.R. 753, 755 (Bkrtcy.N.D.Ill.1985). In reviewing conclusions of law, however, a district court may reach its own conclusion. *In re Ellis*, 66 B.R. 821, 823 (Bkrtcy.N.D.Ill. 1986).

A. *The United States' Appeal: Case No. 87 C 7688*

The United States raises two objections to Judge Wedoff's orders. The first challenge concerns the propriety of awarding compensation to Mr. Kozel under Section 506(c) of the Bankruptcy Code, 11

---

1. Case No. 86 B 11749 was originally assigned to Judge Eisen. On November 2, 1987 the case was reassigned to Judge Wedoff.

U.S.C. § 506(c).[2] Section 506(c) provides an exception to the general rule that the administrative expenses of a bankruptcy court are not charged against the secured creditors' collateral. *Matter of Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982). To obtain compensation under Section 506(c), the applicant must prove that the expenses were (1) reasonable, (2) necessary, and (3) beneficial to the secured creditor(s). *In re Chicago Lutheran Hospital Association*, 89 B.R. 719, 727 (Bkrtcy.N.D.Ill.1988). Whether a court should allow compensation under Section 506(c) depends upon the facts of each particular case. *Id.*

The thrust of the United States' objection to Judge Wedoff's analysis under Section 506(c) is that Mr. Kozel's activities did not create a fund for the benefit of Radtke's secured creditors. The United States asserts that Mr. Kozel identified the amount due from Schneider as an accounts receivable, but asserts that Mr. Kozel did not create the accounts receivable since Schneider admitted at all relevant times that it owed a fund to Radtke under the terms of the subcontract agreement. Radtke responds that, even though the adversary complaint in Case No. 86 C 1098 was entitled a "Complaint for Interpleader," Mr. Kozel did not file an interpleader action but rather instituted an action against Schneider to recover the accounts receivable on behalf of the estate and its creditors. Radtke further contends that Mr. Kozel continued to provide legal services for the benefit of the creditors by presenting additional motions to encourage Schneider to comply with Judge Wedoff's orders.

The bankruptcy court in this district summarized the meaning of "benefit" in Section 506(c) in *Chicago Lutheran, supra.* The court, per Judge Ginsberg, stated that the "benefit" factor in the Section 506(c) analysis is "the most important because costs and expenses will not be recoverable under 11 U.S.C. Section 506(c) unless they are incurred *primarily* for the benefit of

the secured creditor." *Chicago Lutheran,* 89 B.R. at 728 (emphasis supplied). The court noted that the benefit to the secured creditor "must be shown in a quantitative rather than a qualitative sense:"

Any tertiary benefit received by the secured creditor, especially when it is under-collateralized, is too indefinite and remote to support the allowance of attorney's fees against the property. Further, the secured creditor cannot be required to bear the expenses which benefit the entire estate under the theory that the expenses were incurred to preserve the assets of the estate as a whole. Section 506(c) of the Bankruptcy Code does not convert ordinary administrative expenses into preservation costs through a broad definition of "benefit."

*Id.* (citations omitted).

In this case, Judge Wedoff was entitled to conclude that Mr. Kozel's actions benefitted the creditors. Judge Wedoff reasoned that, although either the United States or the Bank could have attempted to collect the funds from Schneider, the fact that Mr. Kozel expended his efforts to do so saved the Bank and the government the necessary effort. The Bank and the United States each benefitted from Mr. Kozel's success in collecting the funds because they each received a quantifiable share of the account receivable. In addition, the Bank and the United States benefitted from Mr. Kozel's success in obtaining pre- and post-judgment interest on the fund. On the other hand, because Judge Wedoff ruled that Radtke was not entitled to any portion of the fund, Radtke did not benefit from Mr. Kozel's actions. Radtke's secured creditors received a quantifiable benefit from Mr. Kozel's efforts in securing and enlarging the fund from which the creditors received distributions.

The United States also argues on this appeal that, even if Mr. Kozel is entitled to compensation for collecting the account receivable from Schneider, his claim for compensation cannot be paid prior to a federal tax lien. In opposing Mr. Kozel's

---

**2.** Section 506(c) states:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary cost and expenses of preserving, or disposing of, such property to the extent of any benefit of the holder of such claim.
11 U.S.C. § 506(c).

Application for Compensation in the bankruptcy court, the United States raised the argument that a federal tax lien has priority over an award of attorney's fees to an interpleading party. (United States' Response to the Debtor's Request for Compensation of Attorney Fees (Document No. 19) at 8–10). The government cited *Campagna–Turano Bakery, Inc. v. United States*, 632 F.2d 39 (7th Cir.1980), where the Seventh Circuit held that an interpleading plaintiff is not entitled to an award of costs and attorney's fees which diminishes the amount available to satisfy a federal tax lien. *See also Millers Mutual Insurance Association of Illinois v. Wassall*, 738 F.2d 302, 303 (8th Cir.1984), and cases cited. Judge Wedoff did not address the United States' priority argument in his July 8 and 15, 1988 orders.[3]

The reliance of the United States on *Campagna–Turano* was and is misplaced. *Campagna–Turano* involved an award of attorney's fees to the disinterested stakeholder who files an interpleader action pursuant to 28 U.S.C. § 1335 in order to force apportionment of a fund among several defendants. By contrast, this case involves compensation to the attorneys representing a Chapter 11 debtor-in-possession who files an action against a stakeholder to recover a fund owed to the bankrupt estate. Mr. Kozel, as Radtke's attorney, was not a disinterested stakeholder seeking apportionment of a fund within his control. Although Mr. Kozel filed a "Complaint in Interpleader" to recover the fund, the action was in the nature of an independent lawsuit to collect a debt owed to the bankrupt estate. The rule of *Capagna–Turano* therefore is inapplicable.

The United States does not raise any other grounds for objecting to the payment of Mr. Kozel's expenses and fees out of the property securing its lien. Furthermore, the United States has not supported its argument that Mr. Kozel's compensation was excessive by identifying any portion of Mr. Kozel's compensation which is unreasonable. Consequently, Judge Wedoff's decision to award Mr. Kozel $6,302.10 out of a fund totalling $35,487.31 is affirmed.

## B. *Radtke's Appeal: Case No. 88 C 7687*

■ The first issue Radtke raises on appeal concerns Judge Wedoff's determination that the Bank had properly perfected its security interest notwithstanding the fact that the Bank filed its original financing statement on January 13, 1983 against "Radtke Heating and Sheet Metal Company" instead of "Radtke Heating and Sheet Metal Company, *Inc.*" Judge Wedoff rejected this argument on the grounds that "failing to put Inc. at the end of the name is not going to have any impact on the ability of creditors to find this financing transaction." (Tr. 4/11/88 at 8–9). The court also noted that the Bank's continuation agreement contained Radtke's proper name and therefore clarified any ambiguity that might have existed as a result of the original financing statement. (Tr. 4/11/88 at 9).

Judge Wedoff did not err in rejecting Radtke's objection to the Bank's security interest. Courts in this district have ignored immaterial and not misleading irregularities in financing statements in concluding whether a creditor has perfected a security interest. *In re Meyer Midway, Inc.*, 65 B.R. 437, 442 (Bkrtcy.N.D.Ill.1986). Judge Wedoff was entitled to conclude that the Bank's error was not misleading.

The cases Radtke cites are not to the contrary. In *Matter of Lintz West Side Lumber, Inc.*, 655 F.2d 786, 791 (7th Cir. 1981), for example, the Seventh Circuit affirmed the bankruptcy court's ruling that an erroneous financing statement rendered a security interest not perfected. However, in that case, the creditor filed the financing statement in the name of the owners of a close corporation, not in the name of the corporation itself. The Seventh Circuit concluded that the financing statement was seriously misleading because subsequent creditors had to conduct

---

**3.** Radtke has appended to its brief on appeal pages from what appears to be an oral hearing before Judge Wedoff in which Judge Wedoff discusses the Section 506(c) issue. Unfortunately, Radtke does not indicate when this hearing occurred. Moreover, this court was not provided with any official transcript from the bankruptcy court. Therefore, this court declines to consider these pages as documentation in support of this appeal.

an exhaustive search in order to locate the financing statement.

Radtke also contends that Judge Wedoff erroneously refused to compensate Mr. Kozel a portion of his costs and fees. The court has reviewed Radtke's claims and finds them without merit. Accordingly, this court affirms Judge Wedoff's analysis of Mr. Kozel's fee application.[4]

This court concludes that Judge Wedoff correctly analyzed Mr. Kozel's entitlement to compensation under Section 506(c) of the Code. Moreover, the bankruptcy court's decision to reduce the recovery of the United States in order to compensate Mr. Kozel was not erroneous. Finally, Judge Wedoff did not err in concluding that both the United States and the Bank were entitled to some portion of the disputed fund. Accordingly, Judge Wedoff's decision in adversary proceeding No. 86–1098 is affirmed.

### CONCLUSION

For the reasons stated in this memorandum opinion, the decision of the bankruptcy court is AFFIRMED.

See also, Bkrtcy., 75 B.R 348.

---

4. Radtke also mentions that Judge Wedoff erred by permitting the government's tax lien to be satisfied out of the ten percent retainage amount provided for by the subcontract. This court finds this argument so poorly briefed on this appeal that its merit cannot be determined.