## In re MECHANICAL MAINTENANCE, INC.

Civ. A. Nos. 90–6758, 90–6759.
Bankruptcy No. 89–13935 S.

United States District Court,
E.D. Pennsylvania.

June 10, 1991.

Howard S. Klein, Philadelphia, Pa., for debtor.

Robert S. Goldstein, Sagot, Jennings & Sigmond, Philadelphia, Pa., for appellant.

Jeffrey Cooper, Lesser & Kaplan, Blue Bell, Pa., for creditor.

1. Millwrights and Machinery Erectors Local No. 1906 and Steamfitters Local Union No. 420.

2. Carpenters Health and Welfare Fund of Philadelphia and Vicinity, Carpenters Pension and Annuity Fund of Philadelphia and Vicinity, Steamfitters Local Union No. 420 Welfare Fund, Steamfitters Local Union No. 420 Pension Fund, Steamfitters Local Union No. 420 Supplemental Retirement Fund, Steamfitters Local Union No. 420 Apprenticeship Training Fund, Steamfitters Local Union No. 420 Vacation Fund, Pipe Fund

James J. O'Connell, Philadelphia, Pa., U.S. Trustee.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

These are consolidated appeals from an order of the bankruptcy court dismissing the Chapter 11 bankruptcy case of debtor Mechanical Maintenance, Inc. At issue is whether that court incorrectly interpreted section 1112(b) of the Bankruptcy Code and, if it did, whether the dismissal was consequently improper. Jurisdiction is based on 28 U.S.C. § 158(a). This court will reverse and remand with an order that the case be reinstated on the bankruptcy court's docket and that the order dismissing the debtor's petition be vacated.

### I.

As the operator of a mechanical contracting business, the debtor employed members of the appellant unions.[1] Under various collective bargaining agreements, the debtor agreed not only to pay those employees hourly wages but also to contribute to the unions' fringe benefit funds, which are also appellants,[2] a fixed sum for each hour that the employees worked.

In 1989, the debtor experienced financial difficulties, and on October 26, 1989, it filed a voluntary petition for reorganization under Chapter 11. It remained in business as a debtor in possession. Notwithstanding the company's troubles, the unionized employees continued to work, and their work resulted in accounts receivable from various property owners.[3] According to appellants, many of those accounts receivable have been fully collected. Nevertheless,

of Steamfitters Local Union No. 420, and Scholarship Fund of Steamfitters Local Union No. 420.

3. It is not clear from the record whether these accounts receivable were generated prepetition or postpetition. That factual issue should be resolved on remand. For purposes of this appeal, the court assumes that individual accounts were created on both sides of the bankruptcy line.

the employees were paid only their hourly wages, not their fringe benefits.

Appellants filed two proofs of claim for the unpaid contributions to the unions' benefit funds: one claim for $18,505.93 was filed on January 9, 1990; another claim for $67,733.04 was filed on May 1, 1990.

On August 9, 1990, Continental Bank (Continental) moved for relief from the automatic stay pursuant to 11 U.S.C. § 362(d). In its motion, Continental asserted that it held a first priority perfected security interest in the debtor's accounts receivable and other assets and that it was undersecured. Record, Exhibit 6.

Concurrently, the debtor filed a motion to dismiss the Chapter 11 case pursuant to 11 U.S.C. § 1112(b). The debtor averred the following: that its business operations had ceased on July 31, 1990; that all of its assets were subject to Continental's perfected security interest; that Continental was undersecured; and that, therefore, no assets were available for unsecured creditors, and conversion of the case to a case under Chapter 7 would incur needless administrative costs with no benefit to any creditor. Record, Exhibit 5.

Appellants objected to both motions. Essentially, they argued that their members' work created the accounts receivable that Continental sought to collect. As a consequence, they contended, their claims were entitled to superpriority under section 506(c) of the Bankruptcy Code,[4] and any action by the court dismissing the case or providing Continental relief from the stay would frustrate their ability to collect those claims. Record, Exhibits 7, 8.

Oral argument was held before the bankruptcy court on September 12, 1990. Because it granted the debtor's motion to dismiss, the court did not address Continental's motion. Record, Exhibit 9 at 11. As support for its bench ruling, the court relied upon its decision in *In re Geller*, 74 B.R. 685 (Bankr.E.D.Pa.1987), and opined that the debtor, because it had filed a voluntary petition,

> should be able to get out [of bankruptcy] unless ... [the creditors] can show ... plain legal prejudice, which is a pretty— it has to be a pretty serious thing that's going to happen to you if the case is dismissed, as opposed to staying in bankruptcy. I don't know whether you can show that....

Record, Exhibit 9 at 7.

The court rejected appellants' argument that, because their claims were entitled to superpriority under section 506(c), dismissal was improper. Specifically, the court concluded that any priority to which appellants' claims were entitled under bankruptcy law would be equivalent to the priority and remedies that they possessed under state law. Hence, dismissal would not result in plain legal prejudice to appellants. *Id.* at 5, 7–8, 10.

The debtor subsequently turned its accounts receivable over to Continental. Appellants' claims remain unpaid.

## II.

On appeal, appellants contend that the bankruptcy court misinterpreted section 1112(b).[5] They argue that a creditor opposing the motion to dismiss of a debtor who filed a voluntary Chapter 11 petition should not be required to demonstrate "plain legal prejudice." Rather, they assert, there is no presumption in the Bankruptcy Code that a debtor should ordinarily be permitted to dismiss a case voluntarily filed. To the contrary, a court may dismiss a case pursuant to section 1112(b) only if dismissal is in the best interest of creditors and the estate. In this case, appellants submit, their superpriority rights under section 506(c) are not matched under state law,[6] and

---

**4.** Appellants asserted that they were entitled to recover on their section 506(c) claims pursuant to 11 U.S.C. § 507(a)(4).

**5.** Neither the debtor nor Continental has filed a brief in this appeal.

**6.** Appellants express doubt that they could pursue a quantum meruit remedy under Pennsylvania law, which they conclude would apply to their claims. Moreover, to have standing to bring a claim under the Pennsylvania mechanics lien statute, they assert, they would have to have privity of contract with the owners of the

conversion of the case to a case under Chapter 7 would have better served their interests than dismissal did. Hence, dismissal was improper.

### III.

The appellants raise only questions of law; thus this court's scope of review is plenary. *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir.1989).

Section 1112(b) of the Bankruptcy Code states in part:

> [O]n request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under [Chapter 11] to a case under chapter 7 of this title or may dismiss a case under [Chapter 11], *whichever is in the best interest of creditors and the estate, for cause....*

11 U.S.C.A. § 1112(b) (West 1976 & Supp. 1991) (emphasis added).

■ A list of ten grounds that constitute "cause" is then set forth in the statute. Those ten grounds are non-exclusive. A court may consider other factors as they arise and may "use its equitable powers to reach an appropriate result in individual cases." S.Rep. No. 989, 95th Cong., 2d Sess. 117, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5903; *In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir.1990); *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1989).

■ When ruling on a section 1112(b) motion, a court must, as a *threshold* matter, determine whether such "cause" exists. *See, e.g., In re Gonic*, 909 F.2d at 626; *In re T.S.P. Indus., Inc.*, 117 B.R. 375, 376 (Bankr.N.D.Ill.1990). If the motion is opposed, the moving party bears the burden of proof on the issue of cause, even if the motion is a debtor's voluntary motion. *In re Sullivan*, 108 B.R. 555, 557 (Bankr.E.D.Pa.1989); *In re GPA Technical Consultants, Inc.*, 106 B.R. 139, 140 (Bankr.S.D.Ohio 1989).

■ Once the threshold is passed and cause is found to exist, the decision wheth-

er to convert to Chapter 7 or to dismiss is committed to the discretion of the bankruptcy court. S.Rep. No. 989, 95th Cong., 2d Sess. 117, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5903; *see also Hall v. Vance*, 887 F.2d at 1044; *In re Page*, 118 B.R. 456, 459 (Bankr.N.D.Tex. 1990); *In re T.S.P. Indus., Inc.*, 117 B.R. at 376. The choice of conversion or dismissal must be based, nevertheless, on a "best interest of creditors and the estate" test. *See In re Page*, 118 B.R. at 459; *In re T.S.P. Indus., Inc.*, 117 B.R. at 376; *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 985 (Bankr.N.D.N.Y.1988); *In re Justus Hospitality Properties, Ltd.*, 86 B.R. 261, 265 (Bankr.M.D.Fla.1988); *In re Rose*, 86 B.R. 439, 440 (Bankr.E.D.Pa.1988) (*after* court found cause under § 1112(b)(10), it then looked to best interest test to determine whether conversion or dismissal was more appropriate).

■ Although the bankruptcy court treated its earlier interpretation of section 1112(b) in *In re Geller* as *stare decisis*, this court is not so constrained. Indeed, I conclude that the *Geller* court misread section 1112(b).

Involved in *Geller* were debtors' motions to dismiss voluntarily both a voluntary Chapter 11 case and a voluntary Chapter 7 case. The cases had been jointly administered. The trustee and one creditor objected to the motions.

Unable to "find ... pertinent cases" construing section 1112(b), the *Geller* court sought interpretive guidance from cases analyzing Bankruptcy Code section 707(a), which governed dismissal of the Chapter 7 case and which provides in part:

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause....

11 U.S.C.A. § 707(a) (West Supp.1991); *In re Geller*, 74 B.R. 685, 688 (Bankr.E.D.Pa. 1987).

Unlike section 1112(b), section 707(a) does not present a court with a *choice* (once "cause" has been ascertained) be-

---

property on which they worked. Here, such privity is absent; only the debtor had a contrac-

tual relationship with the property owners. Brief at 5 & n. 3.

tween conversion to another chapter and dismissal. Dismissal is the only option. Understandably absent from section 707(a), therefore, is reference to "the best interest of creditors and the estate"—language that in section 1112(b) relates directly to a court's choice between converting and dismissing a case. Hence, cases interpreting section 707(a) were, at best, relevant to the court's analysis of the word *cause* in section 1112(b); such cases could shed no light, however, on that section's "best interest of the creditors" test.

Central to the court's analysis, moreover, was an anticipation of several ironies and asymmetries that would arise if voluntary motions to dismiss voluntary Chapter 7 and Chapter 11 cases were regularly denied.[7] None of those purported contradictions was based upon the flush language in section 1112(b). Rather, the ironies arose from a strict reading of "cause" in section 707(a). *Id.* at 689.

Relying upon *In re Hall*, 15 B.R. 913 (Bankr.9th Cir.1981), the *Geller* court concluded:

[Chapter 7] cases in which a debtor's request for a voluntary dismissal has been rejected upon the objection of a creditor hold that such a request should generally be granted unless some *"plain legal prejudice"* to creditors will otherwise result.... While we believe that all creditors and the Trustee should clearly have an opportunity to convince the Court that *"cause" in the form of "plain legal prejudice"* for refusing to allow a debtor to voluntarily dismiss a bankruptcy case exists, we must confess that, when the ironies which come into play when a court interprets § 707(a) strictly and denies such a motion are

considered, we would be hard-pressed to articulate just what circumstances could constitute such "plain legal prejudice" ... to justify the result of a denial of a request to voluntarily dismiss a voluntary case. Hence, we would grant such a motion in all but extraordinary situations.

*Id.* at 690 (emphasis added) (citations omitted).... Such reasoning, the *Geller* court stated, applied to section 1112(b) as well as to section 707(a).[8]

Apparently, the *Geller* court concluded that a creditor opposing a debtor's voluntary section 1112(b) motion to dismiss bears the burden of *negating* "cause" by showing "plain legal prejudice." If cause is found to exist, and if the creditor does not negate cause with such a showing, the court must dismiss the case, without any further consideration of the "best interest of creditors and the estate."

As noted above, the *Geller* court relied on *In re Hall* to support its reasoning. That Bankruptcy Appellate Panel case, in turn, relied on *Matter of International Inn Partnership*, 517 F.2d 510 (9th Cir. 1975), to buttress the use of a "plain legal prejudice" standard in relation to an analysis of "cause" under section 707(a). *See In re Hall*, 15 B.R. 913, 916–17 (Bankr.9th Cir.1981).

Significantly, the Court of Appeals' precode creation of a "plain legal prejudice" standard for voluntary bankruptcy dismissals in *Matter of International Inn Partnership* was based entirely on two commentators' perception of the standard for voluntary dismissals of civil actions under Rule 41(a)(2) of the Federal Rules of Civil Procedure. 517 F.2d at 511–12 (quoting 9

---

**7.** The court stated, for example, that it would be asymmetrical as well as illogical to permit a Chapter 7 case to be voluntarily initiated, yet to hinder its voluntary dismissal. Opining that the code should be interpreted to avoid such illogic, the court stated that creditors objecting to a dismissal would be fairly treated notwithstanding such an interpretation. Specifically, such creditors could simply file an involuntary case after dismissal of the voluntary case. *Id.* at 689. The court's facile discussion overlooks, however, the creditor priorities and other rights that are directly related to the petition date and that

would be lost if a new, later petition date were set.

**8.** *Accord In re Turboff*, 120 B.R. 849, 850 (Bankr.S.D.Tex.1990); *In re Kimble*, 96 B.R. 305, 307–08 (Bankr.D.Mont.1988); *In re Sible*, 95 B.R. 192, 194 (Bankr.D.Mont.1989); *In re Smith*, 77 B.R. 496, 500–01 (Bankr.E.D.Pa.1987) (bankruptcy judge who wrote *Geller* opining that "The court can act in the best interest of creditors through conversion or dismissal only for "cause").

C. Wright & A. Miller, *Federal Practice and Procedure* § 2364 (1971) at 165). This court need not dwell on the different policies and concerns that inform substantive bankruptcy law and federal civil procedural rules in order to conclude that case law construing federal procedural rules generally is not persuasive with respect to the meaning of a Bankruptcy Code provision, especially when that provision's explicit language is inconsistent with such case law. To conclude otherwise would indeed be ironic. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169, 179 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); *United States v. Holroyd*, 732 F.2d 1122, 1125 (2d Cir.1984) ("Our analysis is constrained by a fundamental rule of statutory construction: when the express language of a statute is clear, a court will not adopt a different construction absent clear legislative history contradicting the plain meaning of the words.").

I conclude that the *Geller* court and the bankruptcy court in this case misread section 1112(b).

■ In reaching that conclusion, I do not mean to intimate that the bankruptcy court abused its discretion by finding, at the threshold, that cause existed to convert or dismiss the case. To be sure, the fact that the debtor's business operations had ceased on July 31, 1990, for example, provided reasonable grounds for cause. *See* 11 U.S.C. § 1112(b)(1) ("continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation" constitute cause); *see also In re Gonic Realty Trust*, 909 F.2d 624, 627 (1st Cir.1990) (purposes of Bankruptcy Code are (1) to encourage financial restructuring and (2) to encourage payments to creditors, and when no business is left to reorganize, Chapter 11 proceedings do not serve those purposes, and cause exists).

9. Even if section 1112(b) could be read to support a "plain legal prejudice" burden for creditors, it is not as clear as the bankruptcy court

But the court was wrong to hold that a debtor's voluntary motion to dismiss is reflexively to be granted whenever cause exists but is not negated by a showing of "plain legal prejudice" to creditors.

Rather, once cause is ascertained, section 1112(b) requires a court to move to a second, analytically separate step and to base its decision whether to dismiss or convert on "the best interest of creditors and the estate." Hence, a court wishing to convert a case because conversion appears to be in the best interest of creditors need not dismiss the case simply because the creditors have not demonstrated plain legal prejudice.

Analyzed in the light of the "best interest of creditors and the estate" test, the appellants' compelling legal argument that their claims were entitled to superpriority under section 506(c) and that the debtor's case should, consequently, have been converted to a case under Chapter 7 deserved the bankruptcy court's full consideration.[9] *See generally In re Gonic Realty Trust*, 909 F.2d at 624 (one of main purposes of Bankruptcy Code was to encourage payments to creditors); *In re GPA*, 106 B.R. at 144 ("[T]hat creditors have superior rights in bankruptcy ... is a valid consideration for not dismissing a case.").

IV.

■ Because Continental was undersecured on the debtor's accounts receivable and other assets, the bankruptcy court properly rejected appellants' argument that they were entitled to recover on their claims pursuant to 11 U.S.C. § 507(a)(4), which provides a level of priority among *unsecured* creditors for claims based on *prepetition* contributions to an employee benefit plan.

■ Section 506(c), on the other hand, when it applies, provides a creditor priority even over *secured* creditors for preservation or disposition expenses incurred *postpetition*.

Section 506(c) states:

intimated that appellants' inability to act pursuant to section 506(c) would not constitute plain legal prejudice.

(c) The trustee may recover from property securing an allowed secured claim the *reasonable, necessary costs and expenses* of *preserving, or disposing* of, such property to the extent of any *benefit* to the holder of such claim.

11 U.S.C. § 506(c) (emphasis added); *see also* 11 U.S.C. § 102(5) (the word *or*, when used in the Bankruptcy Code, "is not exclusive").

■ Generally, administrative expenses in bankruptcy must be charged to the estate and not to equity or assets belonging to secured creditors. The section 506(c) exception to this rule is based on the principle that, once a petition is filed, "... the cost of protecting a fund in court is ... a dominant charge on that fund." *Adair v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 303 U.S. 350, 361, 58 S.Ct. 594, 600, 82 L.Ed. 889 (1938); 2 *Collier Bankruptcy Manual* ¶ 506.05 (1991) at 506-26. Thus, section 506(c) costs of preserving or disposing of collateral have a unique superpriority under the Bankruptcy Code, a priority over even section 506(b) postpetition sums otherwise owing to an oversecured creditor.

The question remains: when does section 506(c) apply?

■ The following language from the legislative history of the Bankruptcy Reform Act suggests that, when the value of secured property is less than the amount of the secured claim, and when the secured creditor is thus undersecured (as in the instant case), a recovery under section 506(c) is inappropriate:

[Section 506(c) ] ... codifies current law by permitting the trustee to recover from property *the value of which is greater than the sum of the claims secured* by a lien on that property the reasonable, necessary costs and expenses of preserving, or disposing of, the property.

S.Rep. No. 989, 95th Cong., 2d Sess. 68, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854; H.R.Rep. No. 595, 95th Cong., 1st Sess. 357, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6313.

Yet, as the Court of Appeals for the Seventh Circuit recognized in *Matter of Trim–X, Inc.*, section 506(c) itself makes no reference to the relative values of the property securing an allowed claim and the claim itself, unlike section 506(b) of the Code. 695 F.2d 296, 298 (7th Cir.1982). Moreover, further statements of legislative leaders made upon introduction of amendments to section 506(c) subsequent to the initial reports undercut the view that recovery is prohibited when the secured creditor is undersecured. *Id.* at 298–99. In light of the statutory language and the legislative dicta, I agree with the *Trim–X* court that the relative values of the assets and the secured claim are not determinative factors in a section 506(c) analysis like this.

■ In order for a secured creditor to be charged with expenses under section 506(c), a three-part test must be satisfied. It must be shown that (1) the expenditure was necessary, (2) the amounts expended were reasonable, and (3) the creditor benefitted from the expenses. *Matter of Trim–X, Inc.*, 695 F.2d 296, 299 (7th Cir.1982); *see also In re Trenge*, 127 B.R. 552, 555 (E.D.Pa.1991). Any recovery of costs is limited to the extent of the benefit conferred on the secured creditor. H.R.Rep. 595, 95th Cong., 1st Sess. 357 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854, 6313; *see also In re Senior G & A Operating Co.*, 118 B.R. 444, 448–49 (Bankr.W.D.La.1990) (expenses must be incurred "primarily" for benefit of secured creditors, and secured creditors must "directly" benefit); *In re Cann & Saul Steel Co.*, 86 B.R. 413, 417 (Bankr.E.D.Pa.1988) (secured party must gain "actual benefit").

■ Whether expenses are reasonable, necessary, and have benefitted the secured party are factual issues that rest with the sound discretion of the trial judge. *See, e.g., Radtke Heating and Sheet Metal Co. v. State Bank of Cherry*, 103 B.R. 932, 935 (N.D.Ill.1989); *In re Senior G & A Operating Co.*, 118 B.R. at 448. The party seeking recovery bears the burden of proof on those issues. *See In re Delta Towers, Ltd.*, 112 B.R. 811, 815 (E.D.La.1990).

Courts and commentators disagree over whether administrative claimants have standing to seek recovery under section 506(c). The better view, I am satisfied— the one that the Court of Appeals for the Third Circuit has adopted—is that such claimants do have standing where, as here, they have asked the debtor in possession to proceed with a claim but the debtor in possession has not done so. *Compare In re McKeesport Steel Castings Co.*, 799 F.2d 91, 93–94 (3d Cir.1986); *In re Delta Towers*, 112 B.R. at 814–15; *In re Senior G & A Operating Co.*, 118 B.R. at 448; *In re So Good S. Potato Chip Co.*, 116 B.R. 144, 146 (Bankr.E.D.Mo.1990) ("fairness" demands that a postpetition creditor be allowed to prosecute action if trustee or debtor in possession has declined or refused to pursue the action); *In re Cann & Saul Steel Co.*, 86 B.R. at 416 *and In re DLS Indus., Inc.*, 71 B.R. 679, 681 (Bankr.D. Minn.1987) *with In re Interstate Motor Freight Sys. IMFS, Inc.*, 86 B.R. 500, 503– 05 (Bankr.W.D.Mich.1988) *and In re Interstate Motor Freight Sys. IMFS, Inc.*, 71 B.R. 741, 743–45 (Bankr.W.D.Mich.1987) (employee benefit funds do not have standing to bring a claim); *see also* 2 *Collier Bankruptcy Manual* ¶ 506.05 (1991) at 506–31, 32.

The remaining legal issue is whether claimants like the appellants may pursue a section 506(c) claim for the value of their *labor* in *creating* collateral, or whether the statutory contemplation of recovery of "*costs* and *expenses* of *preserving,* or *disposing* of" property fails to embrace such claims.

The legislative history to section 506(c) provides:

> Any time the ... debtor in possession *expends money* to provide for the reasonable and necessary cost and expenses of preserving or disposing of a secured creditor's collateral, the ... debtor in possession is entitled to recover such expenses....

1978 U.S.Code Cong. & Admin.News 5787, 6451. One court, relying upon this language, held that *debtor*-farmers were not permitted to recover under section 506(c)

for the value of their postpetition labor in producing crops. *In re Settles,* 75 B.R. 229, 230–31 (Bankr.C.D.Ill.1987) (such labor does not "involve the expenditure of money," and debtor would get double benefit if value of labor were recovered).

But the inequities that are involved when debtors are permitted to recover the value of their postpetition labor are not present when creditors are permitted such recovery. Especially where, as here, the debtor in possession *should have* expended money to contribute fringe benefits to the appellant funds, but did not do so, the appellants should be able to recover those unpaid sums. Of course, such a recovery is contingent upon the withheld sums being reasonable and necessary expenses for labor that created postpetition accounts receivable that directly benefitted Continental. *See Meinhard Greeff & Co. v. Edens,* 189 F.2d 792, 796 (4th Cir.1951) (value was added to yarn during manufacturing process, and trustees were entitled to charge against the proceeds the expenses allocable to manufacturing process); 2 *Collier Bankruptcy Manual* ¶ 506.05 (1991) at 506–32 ("a secured creditor who received a direct benefit from the *rendition of services* ... by an administrative claimant should have the collateral charged for that benefit...."); *see also In re Senior G & A Operating Co.,* 118 B.R. 444, 449 ("[a section] 506(c) surcharge arises from federal law to prevent unjust enrichment").

## V.

For the foregoing reasons, the order dismissing the debtor's petition will be vacated, and the case remanded and reinstated on the bankruptcy court's docket. On remand, the court should determine whether the unpaid fringe benefits were reasonable, necessary expenses for labor that created postpetition accounts receivable that inured to Continental's direct benefit. If the court determines that appellants' claims have priority under section 506(c), then the court must proceed to apply the "best interest of the creditors and the estate" test before choosing conversion or dismissal. In applying that test, the court should, in exercising its discretion, compare appellants' remedies under state law. Should the court conclude

that no equivalent state remedies exist, the court nevertheless has two alternatives. Should the court choose conversion, the trustee—once it reclaims the accounts receivable, finds Continental's security interest to be valid, and pays the section 506(c) expenses—can, of course, abandon the property to Continental, thus saving administrative costs. Should it decide to dismiss the case, on the other hand, the court—after it reclaims the accounts receivable—may retain jurisdiction pursuant to 11 U.S.C. § 349(b) and retain sufficient funds in its registry to pay the section 506(c) claims. The choice is committed to the court's discretion.

An appropriate order follows.

## ORDER

AND NOW, this 10th day of June, 1991, upon consideration of the appellants' briefs and the record, and for the reasons stated in the accompanying memorandum, it is ORDERED that Bankruptcy Judge David A. Scholl's order of September 12, 1990 dismissing the Chapter 11 case of debtor Mechanical Maintenance, Inc. is VACATED and this case is REMANDED to the bankruptcy court for further proceedings not inconsistent with this court's memorandum.