**In re PHOENIX PIPE AND TUBE, L.P.**

Civ. A. No. 93–3879.

United States District Court,
E.D. Pennsylvania.

Nov. 14, 1994.

Joseph A. Dworetzky, Drinker, Biddle & Reath, William A. Slaughter and Vincent J. Marriott, III, Ballard, Spahr, Andrews &

Ingersoll, Philadelphia, PA, for Phoenix Pipe & Tube, L.P.

William M. Shields, Monteverde & Hemphill, Philadelphia, PA, for FirstMiss Steel, Inc.

Robert H. Levin, Adelman, Lavine, Gold & Levin, Philadelphia, PA, for creditors' committee, interested party.

Lynne Gerber–Saionz, Philadelphia, PA, for United Steelworkers of America, interested party.

Frederic Baker, Senior Asst. U.S. Trustee, pro se.

### *MEMORANDUM*

RAYMOND J. BRODERICK, District Judge.

A secured creditor, FirstMiss Steel, Inc. ("FirstMiss"), has appealed from a June 17, 1993 Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania, which Order provided that the salary of Donald Lifton, the Chief Executive Officer of the Debtor Phoenix Pipe and Tube, L.P., ("Phoenix Pipe"), "earned from March 28, 1993 through April 16, 1993, along with all other fringe benefits, shall be rendered forthwith." For the reasons set forth hereinafter, the June 17, 1993 Order of the Bankruptcy Court will be affirmed.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The Bankruptcy Court's findings of fact will be set aside only if they are clearly erroneous and the Bankruptcy Court's conclusions of law will be reviewed *de novo*. *In re C.S. Associates,* 29 F.3d 903, 905 (3d Cir.1994).

The record in this case reveals the following facts relevant to the instant appeal:

On April 13, 1992, Phoenix Pipe, a manufacturer and producer of steel pipe and tube products, filed a petition under Chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the Eastern District of Pennsylvania. Phoenix Tube continued to operate its business after filing its Chapter 11 petition in bankruptcy. Upon the filing of its petition in bankruptcy, several creditors claimed a security interest in Phoenix Pipe's

"cash collateral" as that term is defined in 11 U.S.C. § 363(a), which provides:

> In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

On August 6, 1992, the Bankruptcy Court for the Eastern District of Pennsylvania entered an Order approving a July 31, 1993 Inventory Supply and Security Agreement providing secured creditor FirstMiss and other secured creditors with a security interest in all of Phoenix Pipe's post-petition accounts receivable and inventory.

On May 5, 1992, the Bankruptcy Court entered an Order concerning the interim use of cash collateral pursuant to which Order Phoenix Pipe was permitted to use cash collateral on a consensual basis. On February 5, 1993, one of the secured creditors, Fidelity Bank, N.A., ("Fidelity"), moved for relief from the automatic stay and requested termination of the use of cash collateral. Fidelity's motion was denied and the debtor was authorized to use the cash collateral until March 2, 1993, at which time a hearing was scheduled concerning the continued use by Phoenix Pipe of the cash collateral. This hearing and the permission to use cash collateral were continued, by agreement of all parties, until March 11, 1993.

On March 5, 1993, Fidelity and FirstMiss filed a joint motion for relief from the automatic stay and termination of Phoenix Pipe's use of the cash collateral. A hearing was scheduled for March 11, 1993. On March 11, 1993, the Bankruptcy Court entered an Order approving a stipulation between First-Miss, Fidelity, and Phoenix Pipe permitting Phoenix Pipe to use cash collateral until May 10, 1993, provided certain conditions were met. If said conditions were not met, the stipulation approved by the Bankruptcy Court provided that Phoenix Pipe could use cash collateral only until April 10, 1993.

Phoenix Pipe failed to meet the conditions of the March 11, 1993 stipulation, and, accordingly, Phoenix Pipe's use of cash collateral terminated on April 10, 1993. However, Phoenix Pipe's employees continued working through and including April 16, 1993. Since Phoenix Pipe's authority to use cash collateral ceased on April 10, 1993, money for the payroll was not available for the period from March 28, 1993 through April 16, 1993. As a result, the United Steel Workers of America, AFL–CIO, CLC (the "Union"), on behalf of the employees represented by the Union, filed an application with the Bankruptcy Court seeking an order compelling Phoenix Pipe to pay and the secured creditors to permit payment of the wages and benefits due the Union employees from the secured creditor's cash collateral. Phoenix Pipe supported the Union's application and requested that the Bankruptcy Court compel payment of all its employees, Union and non Union, for the period from March 28, 1993 through April 16, 1993. Secured creditor Fidelity expressed its support for the Union's request. Secured creditor FirstMiss objected.

On April 22, 1993, a hearing was held on the application to pay all employees, Union and non-Union, for the period from March 28, 1993 through April 16, 1993. On May 12, 1993, the Bankruptcy Court entered the following Order, 1993 WL 303997:

> AND NOW, this 12th day of May 1993, it is ORDERED that the application of the United Steelworkers of America, AFL–CIO, CLC ("the Union") for payment of wages, salaries, and employment benefits under 11 U.S.C. § 503 and § 506(c) is GRANTED as the Court finds that: (1) FirstMiss Steel, Inc. ("FirstMiss") consented to the payment of the wages, salaries and benefits from March 28, 1993 through April 16, 1993; and (2) the wages, salaries and employee benefits were reasonable, necessary, and provided benefit to secured creditors.

In a single-spaced page and half long footnote to the above Order, the Bankruptcy Court set forth its findings for granting the application. The Bankruptcy Court noted

that the March 11, 1993 cash collateral stipulation between the secured creditors and Phoenix Pipe, which stipulation was approved by the Bankruptcy Court, provided for continued production by Phoenix Pipe through April 10, 1993. The Bankruptcy Court made the following findings:

Clearly, through April 10, 1993, FirstMiss had expressly consented to the use of cash collateral to pay the employees. Therefore, FirstMiss is prohibited from objecting to expenses to which they expressly consented. With respect to the additional week, in that production ceased only one week prior, it is a natural consequence that the facility would have to be properly closed. Thus, it is foreseeable that Debtor [Phoenix Pipe] would incur additional expenses to wind down the mill. Accordingly, in that the proper closing of the mill preserves assets of the estate, and said preservation was foreseeable, we are obliged to conclude that FirstMiss implicitly consented to all expenses incurred.

Alternatively, the Bankruptcy Court relied on the provisions of 11 U.S.C. § 506(c) to allow the continued use of cash collateral to pay Phoenix Pipe's employees' wages and salaries through April 16, 1993. The Bankruptcy Court found:

Even if there was no consent to the expenses, we find that the expenses are properly paid under 11 U.S.C. § 506(c). § 506(c) provides that the collateral of a secured creditor may be charged for expenses which are necessary, reasonable and benefit the creditor. Included in recoverable expenses is the labor in creating collateral. *See In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 390 (E.D.Pa. 1991). Here, employee expenses were clearly necessary. Raw materials were converted to finished goods by the employees in the ordinary course of business which in turn provided accounts receivable for Debtor. Production would have ceased, thereby halting all accounts receivable, if not for the employees.

Our focus then shifts to the reasonability of the expenses. *In re Trenge*, 127 B.R. 552 (E.D.Pa.1991) defines a reasonable expense as one "normally incurred in procur-

ing a similar service in a standard commercial setting." The payroll period in question is comparable to previous payrolls for both services performed and rates requested. Therefore, we find that the expense is reasonable.

Turning to the third requirement, whether the secured creditors benefitted from the continued production. 11 U.S.C. § 506(c) limits the inquiry of a creditor's benefit to the specific expense at issue. Therefore, our sole focus is whether the continued production resulted in a benefit, not whether the operation, in its entirety, resulted in a benefit. Raw materials with a value of $360 a ton have been converted to finished product worth $830 a ton, resulting in accounts receivable of $1,079,-000.00 Additional accounts receivable is a clear benefit to secured creditors. Having concluded that the expenses were reasonable, necessary and provided a benefit, we are mandated to grant the request for payment of the wages, salaries and benefits.

Thus, the Bankruptcy Court found that the expenses were necessary, reasonable, and a benefit to the secured creditors and granted the application for payment of wages, salaries, and benefits to all employees, Union and non-Union, for the period from March 28, 1993 through April 16, 1993.

On May 25, 1993, Phoenix Pipe sought clarification of the May 12, 1993 Order as to whether the Order applied to the salary and benefits of Phoenix Pipe's Chief Executive Officer, Donald Lifton. On June 17, 1993 the Bankruptcy Court entered the following Order:

AND NOW, this 17th day of June 1993, upon consideration of Debtor's request to extend our Order of May 12, 1993, to include payment of Donald Lifton's salary, and objections thereto, it is ORDERED that Lifton's salary earned from March 28, 1993 through April 16, 1993, along with all other fringe benefits, shall be rendered forthwith as the Court finds: (1) consent by the secured creditors to the payment of wages, salaries, and benefits from March 28, 1993 through April 16, 1993 includes salary earned by Lifton as he was Chief

Executive Officer of Debtor and was responsible for the overall operation of the manufacturing plant; and (2) the wages, salaries and employee benefits were reasonable, necessary and provided benefit to the secured creditors.

The Bankruptcy Court, in a footnote to its June 17, 1993 Order, made the following findings:

In our Order dated May 12, 1993, we clearly set forth our reasons for permitting payment to all employees of Debtor. Since we believe Lifton is an employee of Debtor, we believe our previous reasoning is equally applicable. Hence we incorporate our prior ruling. Furthermore, although Lifton's services were different in nature than that of the mill workers, nonetheless, his management services were essential. A company does not run itself. The same consent that we found to exist for payment of all employees exists for Lifton. As CEO, he was a significant factor in continued operation. Since we found the secured creditors consented to continued operation, it is preposterous to say the creditors consented to the operation of the plant, but not to its management. Moreover, Fidelity, senior secured creditor, admits that had the cash collateral Order been extended, Lifton's salary would have been paid as part of payroll.

On June 28, 1993, secured creditor First-Miss filed its Notice of Appeal of the Bankruptcy Court's Order of June 17, 1993. FirstMiss claims that the Bankruptcy Court erred in its June 17, 1993 Order by extending the reasoning of the May 12, 1993 Order to allow for the payment of the salary and benefits of Mr. Lifton, Phoenix Pipe's CEO, from March 28, 1993 through April 16, 1993. For the reasons hereinafter set forth, this Court finds that the findings of fact of the Bankruptcy Court are not clearly erroneous and that the Bankruptcy Court has correctly interpreted and applied the legal standard set forth in Section 506(c) in its June 17, 1993 Order approving payment of the salary and benefits of Mr. Lifton from March 28, 1993 through April 16, 1993.

The issue as to whether FirstMiss consented to the payment of the salary and benefits of Mr. Lifton from March 28, 1993 through April 16, 1993, will not be discussed since this Court finds that the Bankruptcy Court in applying 11 U.S.C. § 506(c) made all the findings necessary to order the payment of Mr. Lifton's salary and benefits from March 28, 1993 through April 16, 1993.

█ Generally, expenses for the administration of a bankruptcy may not be charged against a secured creditor's collateral. *In re F/S Airlease II, Inc.*, 59 B.R. 769, 778 (Bankr.W.D.Pa.1986), *rev'd on other grounds*, 844 F.2d 99 (3d Cir.1988), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). A statutorily-created exception to this policy is contained in 11 U.S.C. § 506(c) which provides:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

As pointed out recently by the Third Circuit in *In re C.S. Associates*, 29 F.3d 903, 906 (3d Cir.1994):

Our decisions have clarified that to recover expenses under § 506(c), a claimant must demonstrate that (1) the expenditures are reasonable and necessary to the preservation or disposal of the property and (2) the expenditures provide a direct benefit to the secured creditors.

Our Third Circuit Court of Appeals, in *In re McKeesport Steel Castings*, 799 F.2d 91 (3d Cir.1986), held that preservation of the going concern value of a business can constitute a benefit to the secured creditor. The Court, in its opinion, quoted with approval from *In re AFCO Enterprises, Inc.*, 35 B.R. 512, 515 (Bankr.Utah 1983), that "[t]he definition of benefit encompasses more than the bottom line of a balance sheet." *In re McKeesport Steel*, 799 F.2d at 94.

█ This Court's attention has not been called to anything in this record showing that the Bankruptcy Court's findings of fact were "clearly erroneous." As heretofore pointed out, the Bankruptcy Court found that payment of Mr. Lifton's salary and benefits from March 28, 1993 through April 16, 1993 (which totalled $4,631.07 net of withholding) was reasonable, necessary, and conferred a benefit to FirstMiss. Although FirstMiss argues

that it received no benefit because the debtor's collateral dropped in value by $225,-900.00, the Bankruptcy Court found that the secured creditor had benefitted in that steel ingot valued at $360 a ton was converted to finished product valued at $830 a ton during the relevant period of production resulting in accounts receivable of $1,079,000.00. Apparently, FirstMiss concedes that production from March 28, 1993 through April 16, 1993 conferred a benefit to it as a secured creditor. FirstMiss contends, however, that it did not benefit from Mr. Lifton's management services during that time.

As heretofore pointed out in the findings of fact of the Bankruptcy Court, "although Lifton's services were different in nature than that of the mill workers, nonetheless, his management services were essential. A company does not run itself." Based upon a review of the record this Court finds that the Bankruptcy Court's finding that Mr. Lifton's services were essential to the production which conferred a benefit to FirstMiss is not clearly erroneous. Furthermore, this Court has determined, on the basis of its *de novo* review, that the Bankruptcy Court has correctly interpreted and applied the legal standard contained in Section 506(c). Therefore, the Bankruptcy Court's Order of June 17, 1993 ordering that Mr. Lifton's salary and fringe benefits from March 28, 1993 through April 16, 1993 be paid will be affirmed.