**In re GLICKMAN, BERKOVITZ, LEVINSON & WEINER, a Professional Corporation, Debtor.**

**Bankruptcy No. 94–17034 SR.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 12, 1995.

Lawrence Tabas, David Shuter, Obermeyer, Rebmann, Maxwell & Hippel, Philadelphia, PA, for Debtor.

Vincent J. Marriott, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, for Unsecured Creditors Committee.

Robert A. Kargen, Lesser & Kaplin, P.C., Blue Bell, PA, for First Valley Bank.

Kurt F. Gwynne, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Charles E. Sigety.

Frederic J. Baker, Asst. U.S. Trustee, Philadelphia, PA.

## *OPINION*

STEPHEN RASLAVICH, Bankruptcy Judge.

### *Introduction.*

Charles E. Sigety t/a Valley Green Corporate Center (the "Lessor") has filed a Motion in this "liquidating" Chapter 11 case seeking an Order (1) allowing administrative expense claim; (2) providing that Lessor may recover its claim pursuant to 11 U.S.C. § 506(c); and (3) directing immediate payment of Lessor's administrative expense pursuant to 11 U.S.C. § 365(d)(3) (the "Motion"). The Motion was initially opposed by the Debtor, Glickman, Berkovitz, Levinson & Weiner, a Professional Corporation (the "Debtor"), by the Official Committee of Unsecured Creditors (the "Committee"), by certain former employees of the Debtor (the "Employee Group"), and by First Valley Bank (the "Bank"). The Objections of the Debtor and the Committee were resolved in a written Stipulation of Settlement dated April 4, 1995. The continuing objection of the Employee Group, if any, was effectively overruled through approval of the foregoing Stipulation of Settlement by the Court on April 6, 1995. The essence of the Settlement Stipulation was an agreed

reduction in the amount of the administrative rent claim sought by the Lessor from $129,484.09 to $110,000, and an agreement that the claim would be paid on a pro rata basis along with and at the same time as other administrative claims. The foregoing Settlement Stipulation resolved matters 1 and 3 as raised in the Motion. The agreed monetary reduction, however, is effective only as between the Lessor, the Debtor and the Committee. The Lessor continues to press herein matter 2 of its Motion, i.e., its surcharge claim against the Bank, under 11 U.S.C. § 506(c), in the original amount of $129,484.09.

An evidentiary hearing was held on March 29, 1995, and the Lessor and the Bank have each submitted post-trial *Memoranda of Law* in support of their respective positions. For the reasons hereinafter discussed, the Lessor's Motion will be granted in part and denied in part.

### Background.

The Debtor is a former public accounting firm. It filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on October 27, 1994. At the time of the Bankruptcy filing, the Debtor was the Lessee of approximately 23,769 square feet of office space in the Valley Green Corporate Center, Suite 300, 7111 Valley Green Road, Fort Washington, Pennsylvania 19034 (the "Leasehold Premises"), pursuant to a written lease dated October 21, 1988, as amended on or about March 6, 1989, July 18, 1989, November 30, 1989 and June 1, 1994 (the "Lease"). A copy of the Lease, as amended was admitted at the hearing of March 29, 1995, as Lessor's Exhibit M–4.

At the time of its Bankruptcy filing, the Debtor was in arrears under the Lease in the approximate amount of $148,000. On or about December 22, 1994, the Debtor filed a Motion seeking an Order, pursuant to 11 U.S.C. § 365(d), extending the sixty day deadline for the Debtor to assume or reject the Lease. This Motion was opposed by the Lessor. However, by consent order dated January 26, 1995 (Exhibit M–6), the Debtor and the Lessor settled the dispute and agreed that the Lease would be deemed rejected as of January 30, 1995, and the Debtor would surrender possession of the Leasehold premises to the Lessor on that date. The Bank apparently took no position with respect to the Debtor's § 365(d) Motion or its settlement. It is undisputed that from the Bankruptcy filing date of October 27, 1994, through the rejection date of January 30, 1995, no rent or related charges were paid to the Lessor.

At the time of its bankruptcy filing, the Debtor had already discontinued on-going operations as an accounting firm. Rather, at or by that point in time the various shareholders of the Debtor corporation had resituated themselves in new or different professional firms and were servicing the Debtor's former clients from those new locations. The principal assets of the Debtor corporation at the time of the bankruptcy filing consisted of 1) office furniture and furnishings, computer equipment and related personalty, all or a large part of which still remained at the leasehold premises, and 2) outstanding accounts receivable.

The Bank is a secured creditor of the Debtor and holds a first lien on the foregoing assets. The gravamen of the Lessor's motion to recover what amounts to all of the unpaid post-petition rent from the Bank under 11 U.S.C. § 506(c) is that subsequent to the bankruptcy filing date, the Debtor used the Leasehold Premises to store its furniture and equipment, and also allegedly "operated" out of the property in an effort to collect outstanding accounts receivable. The Lessor's argument in this respect is two fold: first, the Lessor argues that the Bank implicitly consented to paying post-petition, pre-rejection period rent under the Lease by its agreement to a *Stipulation and Order Authorizing Debtor's Interim use of Cash Collateral* (Exhibit M–8), that was approved by the Court on December 15, 1994, and which authorized use of cash collateral for the period December 1, 1994 through December 31, 1994 to pay, *inter alia,* December rent and utilities in the amount of $3,800. Alternatively, the Lessor reasons that by establishing the amounts which the Bank has received from the liquidation of the furniture and equipment and/or the collection of accounts receivable, during the post-petition, pre-re-

jection period, the Lessor can satisfy the burden of proof necessary for the assertion of a surcharge against these assets or their proceeds under 11 U.S.C. 506(c).

The Bank, in response, makes basically contra arguments. At the outset, the Bank challenges the Lessor's standing to assert a motion under 11 U.S.C. § 506(c). To the extent this argument is unavailing, the Bank argues that the Debtor has failed to establish the Bank's consent to pay post-petition rent, and has failed to meet its burden of satisfying the stringent criteria for a surcharge under 11 U.S.C. § 506(c).

*Discussion.*

### A. *Standing*

■ Despite the rather lengthy discussion of the standing issue by the Bank in its post-trial Memorandum of Law, the Court does not perceive the standing question to be a particularly close one. The governing authority in this jurisdiction at the present time is represented by *In re McKeesport Steel Castings Co.,* 799 F.2d 91, 94 (3d Cir.1986). The Bank argues that *McKeesport* is not controlling, however this argument in the main is merely an attempt to distinguish *McKeesport* on the basis of the facts presented herein. In this respect, the Bank's argument is unpersuasive. The holding of *McKeesport,* meanwhile, is rather clear. It provides that a creditor, as opposed to a Trustee, has standing to file a § 506(c) motion where it can be shown that only the creditor would zealously pursue that action. Leaving aside the Bank's argument that the specific facts of *McKeesport* are distinguishable from those herein, even the Bank appears to agree that *McKeesport,* at a minimum, requires a case by case analysis for the purpose of determining whether sufficient cause exists to allow a particular creditor to pursue a particular § 506(c) claim. In this instance, the Court notes that while both the Committee and the Debtor attended the evidentiary hearing held in this matter, each expressly stated on the record that they took no position with respect to the relief requested. Where the Debtor and the Committee decline to even support a creditor's § 506(c) Motion, one may reasonably conclude that the creditor cannot rely on the Debtor or the Committee to "zealously pursue" that claim. In this respect, in particular, the Court rejects any argument that a specific "demand and refusal" must first be demonstrated before a creditor will be accorded standing to advance its own § 506(c) claim.

The Court accordingly concludes that the Lessor has standing to bring the Motion *sub judice. See also, In re Isaac Cohen Clothing Corp.,* 39 B.R. 199 (Bankr.S.D.N.Y.1984); *In re Nutri/System, Inc.,* 178 B.R. 645, 658 (Bankr.E.D.Pa.1995); *In re Nicolet, Inc.,* 80 B.R. 733, 738–739 (Bankr.E.D.Pa.1987).

### B. *The Lessor's 11 U.S.C. § 506(c) Claim*

The Lessor seeks to surcharge the Bank in the amount of $129,484.09. This sum is calculated, as set forth in footnote 10 of the Lessor's post-trial brief, as follows:

10. The $129,484.09 post-petition rent is calculated as follows: $6,090.50 for October (5 days at $1,218.10 per diem); $41,537.24 for November ($37,761.13 monthly rent, including operating expenses, plus $3,776.11 late charge); $41,537.24 for December ($37,761.13 monthly rent, including operating expenses, plus $3,776.11 late charge); $40,319.11 for January (30 days at $1,218.10 per diem, plus $3,776.11 late charge). The per diem rent was calculated by dividing $37,761.13, the monthly rent, including the Debtor's share of operating expenses, by 31 days for the months of October and January.

There is relatively little room for disagreement over the relevant law on the point in issue as well as the allocation of the burden of proof.

■ A recovery under § 506(c) of the Bankruptcy Code is predicated on a creditor's demonstration, by a preponderance of the evidence:

1) That the expenses for which it seeks to surcharge a secured party were reasonable and necessary for disposal of the secured party's collateral;

2) That the expenses provided a direct benefit to the secured party; and

3) That the expenses were incurred for the purpose of preserving or disposing of the secured party's collateral.

*United Jersey Bank v. Miller (In re C.S. Assoc.)*, 29 F.3d 903, 906 (3d Cir.1994); *In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 389 (E.D.Pa.1991); *In re Delta Towers Limited*, 112 B.R. 811, 815 (E.D.La.1990), *aff'd in part, reversed in part on other grounds*, 924 F.2d 74 (5th Cir.1991); *In re Birdsboro Casting Corp.*, 69 B.R. 955, 959 (Bankr.E.D.Pa. 1987).

■ As a complete and sufficient alternative, a creditor may recover under § 506(c) if it can demonstrate that the secured party consented to the expenses being incurred. *In re Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982).

In this jurisdiction, the foregoing alternative bases for relief under 11 U.S.C. § 506(c) have come to be referred to as the *objective test*, which focuses on objective criteria such as the reasonableness of an expense and its benefit to the secured creditor, versus the *subjective test*, which focuses on consent. *In re Orfa Corp. of Philadelphia*, 170 B.R. 257, 272–273 (E.D.Pa.1994); *In re Nutri/System, Inc., supra.*

The merits of the instant motion under the foregoing alternative tests will be considered in inverse order:

### C) *Subjective Test*

■ Although the Lessor asserts that it has satisfied the subjective test, the Lessor's evidence on the issue of consent was exceedingly weak. The only manifestation of consent to which the Lessor can point is the Bank's joinder to the cash collateral stipulation for the month of December, 1994. (Exhibit M–8). This Stipulation, however, authorized only the very modest cash collateral usage of $3,800 for December rent and utilities. At the hearing on March 29, 1995, Bank Officer James Watt confirmed the Bank's agreement that the $3,800 rent payment could be made from the Bank's collateral. Numerous courts have found that by

consenting to payments under a cash collateral stipulation a secured party demonstrates its consent to a corresponding surcharge under 11 U.S.C. § 506(c). *McKeesport*, 799 F.2d at 94. *In re Phoenix Pipe & Tube, L.P.*, 1993 WL 303997, at *1 (Bankr.E.D.Pa. 1993); *In re Croton River Club, Inc.*, 162 B.R. 656, 659 (Bankr.S.D.N.Y.1993). It is another matter, however, to argue that a surcharge should be imposed in an amount far greater than the amount specified in a cash stipulation simply because some outlay for the particular expense category was approved. That, nevertheless, is what the Lessor appears to urge herein.

In *In re Flagstaff Foodservice Corp.*, 762 F.2d 10, 12 (2d Cir.1985), the Second Circuit Court of Appeals said "[a] secured creditor's consent to the payment of designated expenses limited in amount will not be read as a blanket consent to being charged with additional administrative expenses not included in the consent agreement." This Court agrees and quickly rejects the Lessor's argument finding no basis upon which to infer the Bank's consent to a surcharge in the amount of $129,484.09 from the Bank's agreement to a single $3,800 rent expenditure.

Accordingly, the Court concludes that the Lessor has failed to demonstrate the Bank's subjective consent to the payment of post-petition rent, other than the amounts specifically authorized in the December cash collateral stipulation, to wit: $3,800.[1]

### D) *Objective Test*

■ The Lessor's evidence relative to the objective test was somewhat more convincing. As already noted, the Debtor had ceased ongoing business operations as of the date of the bankruptcy filing. It is undisputed, meanwhile, that the Debtor's furniture and equipment, at the time of the bankruptcy filing, was located throughout the two floors of office space it occupied at the Leasehold Premises. An inventory of this furniture and equipment was detailed on Lessor's Exhibits M–1 and M–3. The items listed on Exhibit M–3 remained at the Leasehold Premises until on or about December 21, 1995, at which time they, too, were sold pursuant to

---

1. In this respect, Exhibit M–8, as noted, authorized the sum of $3,800. The Bank's post-trial brief states that a follow-up stipulation for the

month of January 1995 approved an additional $500 rent expenditure, and, if so, this amount too would be subject to a consensual surcharge.

11 U.S.C. § 363 for the sum of $21,625.25. The items listed on Exhibit M–1 remained at the Leasehold Premises until on or about January 23, 1995, on which date that property was sold by the Debtor under 11 U.S.C. § 363 for the sum of $28,088. After deduction of the reasonable costs of sale, the Bank received the approximate sum of $37,000 from the liquidation of the foregoing collateral. At the hearing of March 29, 1995, the Lessor presented testimony from an expert in the commercial office furniture moving and storage industry which indicated that the costs to have moved and stored the furniture and equipment in question for the time periods involved would have been $27,276. On the basis of this evidence, the Lessor argues that a surcharge under 11 U.S.C. § 506(c) in the amount of $27,276 would be appropriate.

The Bank's response to the foregoing was unpersuasive. In conclusory fashion, the Bank simply asserts that the surcharge of rent in this context is neither reasonable nor necessary and that storage of the furniture and equipment at the Leasehold Premises neither provided the Bank with a direct benefit, nor relieved it of an obligation to pay expenses it would otherwise have been required to bear. The Court disagrees. It is clear that the furniture and equipment required storage somewhere pending its liquidation, and that if the assets had been removed from the Leasehold Premises, the Bank would have had to incur that expense to protect its collateral. The storage, in other words, benefitted the Bank by permitting it to realize $37,000 from this collateral. A surcharge for reasonable storage charges is therefore entirely appropriate. On this score, while it is fair for the Bank to quarrel with the Lessor's utilization of commercial office space rental rates to measure reasonable storage charges, the Bank cannot at the same time quarrel with an additional surcharge in the amount of the moving costs that would have been occasioned in relocating the furniture and equipment for consolidation in less expensive warehouse space. The evidence was clear and unrebutted that the aggregate moving and warehouse storage costs would, in this instance, have been $27,-276. Accordingly, the Court finds that this amount is properly assessable against the Bank under 11 U.S.C. § 506(c).

The Lessor's argument with respect to use of the Leasehold Premises for purposes of collecting outstanding accounts receivable was, for purposes of 11 U.S.C. § 506(c), far less convincing. The evidence did establish that, between the date of the commencement of this Chapter 11 case and the date the lease was rejected, the Debtor collected approximately $200,000 of its accounts receivable, which funds were turned over to the Bank. However, it did not follow from the evidence that these collections were attributable in any meaningful way to the Debtor's post-petition operations at the premises. On the contrary, the evidence tended to establish that the responsibility for the collection of outstanding accounts receivable rested, in the main, with the former professionals of the Debtor who had billing responsibility for the particular outstanding accounts, and that billing and follow-up collection contacts with clients was handled off-site by those professionals. In particular, the Court also notes that no account payments were received directly at the Leasehold Premises. While it is true that the evidence also established that some small amount of data processing occurred at the Leasehold Premises post-petition in connection with the generation of billing and/or work-in-progress reports, this activity appears to have been not much more than incidental to the Debtor's principal usage of the Property on a post-petition basis, which was for compliance with the Debtor's administrative duties as a Debtor–in–Possession and, as noted, storage of the Debtor's furniture and equipment. Clearly, no intention to benefit the Bank in this respect is evident to the Court. On this record, therefore, the Court concludes that the Lessor has failed to meet the elements of its burden of proof as discussed at pages 886–87, *supra*. The Court, accordingly, rejects the Lessor's Motion to the extent it seeks to surcharge the Bank against the Debtor's post-petition accounts receivable collections beyond the $3,800 as to which the Court has already determined the Bank consented.

### Conclusion.

In summary, the Court concludes that the Lessor has met its burden of proof with

respect to a surcharge against the Bank under 11 U.S.C. § 506(c), but only in the separate amounts of $3,800 and $27,276, for an aggregate total of $31,076.

An appropriate Order consistent with the foregoing conclusions will be entered herein.

### ORDER

*AND NOW,* this 12th day of May 1995, upon consideration of the Motion of Charles E. Sigety t/a Valley Green Corporate Center (the "Lessor") for an Order (1) Allowing Administrative Expense Claim; (2) Providing that Lessor may Recover its Administrative Expense Claim Pursuant to 11 U.S.C. § 506(c); and (3) Directing Immediate Payment of Lessor's Administrative Expense Claim Pursuant to 11 U.S.C. § 365(d)(3), as well as the parties' legal memoranda, and after a hearing held on March 29, 1995, and consistent with the accompanying Opinion, it is hereby

**ORDERED** that the Lessor shall be and hereby is allowed an administrative claim pursuant to 11 U.S.C. § 506(c) in the amount of $31,076. It is further **ORDERED** that First Valley Bank shall remit said amount to the Lessor forthwith.

