## In re BALDWIN-UNITED CORPORATION, Debtors and Debtors in Possession.

### Civ. A. No. C–1–85–1295.

United States District Court,
S.D. Ohio, W.D.

Sept. 27, 1985.

See also, D.C., 57 B.R. 759.

John Michael Clear, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., and Daniel W. Hammer, Thompson, Hine & Flory, Cleveland, Ohio, for Edward D. Jones & Co.

Drinker, Biddle & Reath, Philadelphia, Pa., for W.H. Newbold's Sons & Co., Inc.

Faegre & Benson, Minneapolis, Minn., for Piper, Jaffray & Hopwood, Inc.

Gaston, Snow, Beekman & Bogue, New York City, for PaineWebber Group, Inc.

Esanu, Katsky, Korins & Siger, New York City, for Planco, Inc.

Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for Stifel, Nicolaus & Co., Inc.

Waller, Landsen, Dortch & Davis, Nashville, Tenn., for J.C. Bradford & Co.

Donald R. Gardner, Keating, Muething, Cincinnati, Ohio, O'Melveny & Myers, Washington, D.C., O'Melveny & Myers, New York City, for Baldwin-United Corp.

## MEMORANDUM AND ORDER DENYING MOTION TO WITHDRAW REFERENCE TO BANKRUPTCY COURT

DAVID S. PORTER, Senior District Judge.

This matter is before this Court on a motion for mandatory withdrawal, pursuant to 28 U.S.C. § 157(d), of this Court's reference to the bankruptcy court of some contingent, unliquidated claims filed in the bankruptcy court against Baldwin-United Corporation and D.H. Baldwin Company.[1] The moving parties, (hereinafter "claimants"), include Edward D. Jones & Co. (doc. 1), and W.H. Newbold's Sons & Co., Inc., Piper, Jaffray & Hopwood, Inc., Paine Webber Group, Inc., Rotan Mosle, Inc., Planco, Inc., Stifel, Nicolaus & Co., Inc., and J.C. Bradford & Co. (doc. 2). The debtors filed a memorandum in opposition (doc. 3), and the claimants filed a reply (doc. 4). A hearing was held September 19, 1985. After examining all of the submissions as well as relevant statutes, legislative history, and case law, we conclude that the motion must be denied. Our rationale is set forth below.

The specific matter now before us involves only one small piece of the complex Chapter 11 proceeding which began with the filing of an involuntary petition against Baldwin on September 26, 1983 in the Bankruptcy Court for the Southern District of Ohio. The Baldwin Chapter 11 proceedings involve approximately $9 billion in assets, $14 billion in claims and more than 8,000 claimants. Moving parties in this matter are some of the broker-dealers who marketed single premium deferred annuities (SPDAs) for some insurance company subsidiaries of Baldwin. They are also among the defendants in a multidistrict litigation proceeding consolidated in the Southern District of New York, *In re Baldwin-United Corporation (Single Premium Deferred Annuities Litigation)*, MDL Nos. 581, M 21–35, (hereinafter MDL 581). MDL 581 is a class action by about 100,000 purchasers of SPDAs against several broker-dealers alleging violations of federal securities law in connection with the sale of the SPDAs and seeking recovery of lost

---

1. As originally filed, claimants' motion also sought a declaration from this Court that the automatic stay pursuant to 11 U.S.C. § 362 is inapplicable to claimants' third-party complaints filed against Baldwin in *In re Baldwin-United Corp. (Single Premium Deferred Annuities Litigation)*, MDL Nos. 581, M 21–35. In the alternative, claimants requested relief from the automatic stay, pursuant to 11 U.S.C. § 362(d)(1), thereby allowing them to pursue actively the claims alleged in the third-party complaints. After claimants filed this motion, and in relation to other proceedings in the bankruptcy court, the bankruptcy court held that the automatic stay of 11 U.S.C. § 362 applies to claimants' claims. Order of July 30, 1985, Adversary No. 1–85–0251. Pursuant to 11 U.S.C. § 105, the bankruptcy court also stayed claimants from continuing or commencing any third-party suits in MDL 581. This order of the bankruptcy court is the subject of an appeal to this Court and, consequently, the issue of the applicability of 11 U.S.C. § 362 to claimants' claims will be decided in the context of that appeal and not here.

interest. The first of the over 100 suits consolidated in MDL 581 was filed three days after the filing of the Baldwin Chapter 11 proceedings.

All of the moving parties here except Rotan Mosle, Inc. and Stifel, Nicolaus & Co., Inc. filed proof of claims in the bankruptcy proceeding on or before the bar date of July 24, 1984, seeking recovery from Baldwin on theories of indemnity and contribution, should they incur any liability in MDL 581 and any similar actions that might be filed in the future (Doc. 3 at 1, 8). Paine Webber's proof of claim by itself totalled approximately $700 million. It is the liquidation of these claims that the moving parties seek to have withdrawn from the bankruptcy court pursuant to 28 U.S.C.A. § 157(d) (West Supp.1985).

Section 157 of the Bankruptcy Amendments and Federal Judgeship Act of 1984 provides that district courts may refer bankruptcy cases and related matters to the bankruptcy judges for the district. 28 U.S.C.A. § 157(a). In the Southern District of Ohio this has been done by a general order of reference. *See In re The Bankruptcy Amendments and Federal Judgeship Act of 1984*, No. MS-1-84-152 (S.D. Ohio, July 30, 1984). Section 157 further provides that the district court *may* withdraw a case from the bankruptcy court "for cause shown," and that it "shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C.A. § 157(d). The claimants in the instant motion assert that the above-quoted language requires that this Court withdraw the reference to the bankruptcy court of their claims. We disagree.

Section 157(d) is still relatively new and there is a dearth of judicial opinion interpreting it and defining when withdrawal is mandatory. Nonetheless it is clear that three conditions are impliedly set forth in the above-quoted statutory language and they must be met. *See In re Baldwin-*

*United Corp.*, 47 B.R. 898, 899 (S.D.Ohio 1984). First, the person seeking withdrawal must be a party. There is no dispute that claimants clearly are parties. Second, the motion to withdraw the reference must be timely. Debtors contend that this condition is not met. Finally, "resolution" of the proceeding must require consideration of non-bankruptcy federal statutes regulating interstate commerce. Debtors also argue that this condition is not met. We agree with the debtors on both points, for the reasons set forth below.

### A. *Timeliness*

In the face of statutory silence regarding when a motion is timely for the purpose of a § 157(d) motion, we must look elsewhere for guidance. Generally, something will be considered timely if it is done at the "first reasonable opportunity." *Long Beach Federal Savings & Loan Ass'n v. FHLBB*, 189 F.Supp. 589, 611 (S.D.Cal.1960). At the very least, timeliness would require that action be taken without undue delay. In determining whether something is timely, it must be evaluated in the context of the specific situation. A motion in a bankruptcy proceeding must therefore be evaluated in light of the status of those proceedings. In a Chapter 11 reorganization, for example, the determination of whether a motion is timely would turn somewhat on whether a reorganization plan and disclosure statement had already been prepared or approved. If a motion could have been filed earlier and it is filed at a time when it could delay and consequently jeopardize the reorganization, it would not be timely.

■ This interpretation of timeliness is supported by the admittedly sparse legislative history of the 1984 Bankruptcy Amendments Act. In commenting on § 157, Senator DeConcini said that it was "intended to avoid unnecessary delays and costs" and that the "withdrawal provision should not be allowed to be used by any party for the purpose of delay." 130 *Cong. Rec.* S7621 (daily ed. June 19, 1984). Moreover, in listing factors that he believed were appropriate for the district court to

consider in deciding a mandatory withdrawal motion, Senator DeConcini specifically mentioned the status of the bankruptcy proceedings. *Id.* Therefore we consider a motion to be timely made if it was made as promptly as possible in light of the developments in the bankruptcy proceeding.

This conclusion is similar to that reached in the only two cases we have seen which discuss the timeliness of a § 157(d) motion. In one, an earlier proceeding related to Baldwin's reorganization, a motion pursuant to § 157(d) was filed in this Court and Judge Walter H. Rice overruled it because he found that it would not be necessary to consider non-bankruptcy federal law, as asserted by movants. *In re Baldwin-United Corp.*, 47 B.R. 898, 900 (S.D.Ohio, 1984). Judge Rice therefore did not address the timeliness issue, but rather instructed the bankruptcy court to conduct an evidentiary hearing on that question. *Id.* at 899. The bankruptcy court did conduct such a hearing and it concluded that as a matter of fact the motion was untimely. *In re Baldwin-United Corp.*, 43 B.R. 888, 895 (Bankr. S.D.Ohio 1984). According to Judge Newsome:

> If they were sincere in their desire to assert their rights under § 157(d), they could and should have acted immediately upon learning that the motion had been filed. Instead, they waited until three days before the motion was to be heard. Their course of conduct leads us to find that the sole reason for filing the motion was to attempt to secure the continuance which they had failed to obtain from this Court.

*Id.* at 891 (citation omitted).

In another case, the United States District Court for the District of Rhode Island concluded that a petition to withdraw an adversary proceeding from the bankruptcy court was not timely when it was filed about a year after the filing of the complaint and the complaint on its face involved consideration of other United States laws regulating interstate commerce. *In re Giorgio*, 50 B.R. 327, 329 (D.R.I.1985). According to that court:

> The fair intendment of the statute in question is to insure that the request for withdrawal be filed as soon as practicable after it has become clear that "other laws" of the genre described in 28 U.S.C. § 157(d) are implicated, so as to protect the court and the parties in interest from useless costs and disarrangement of the calendar, and to prevent unnecessary delay and the use of stalling tactics. Once it becomes apparent that such an issue is in the case, a party has a plain duty to act diligently—or else, to forever hold his peace.

*Id.* at 328–29 (citations omitted).

The *Giorgio* court found that it had been evident from the time the adversary complaint had been filed that its resolution would involve consideration of other federal laws regulating interstate commerce. By waiting about a year before filing the motion to withdraw, the movants were consequently untimely. According to the court, the movants clearly did not take the first reasonable opportunity or even a "close temporal" one. "They fiddled whilst the Bankruptcy Court fires burned." *Id.* at 329.

■ Applying these general principles concerning timeliness, particularly in the context of a Chapter 11 proceeding, we have determined that claimants' motion is untimely both because it could (and should) have been filed earlier, and because the Baldwin reorganization proceedings are now at a critical point which demands particularly strict application of the timeliness requirement.

Claimants argue that they did in fact move at the earliest reasonable opportunity because they had no reason to seek withdrawal of the reference to the bankruptcy court earlier. Their claims against Baldwin, made in July 1984, were by statute "deemed allowed, unless a party in interest ... objects." 11 U.S.C.A. § 502(a) (West 1979). Therefore, they argue, it was not until and unless Baldwin filed objections to their claims that they had any reason to seek withdrawal of the reference. Thus, claimants contend, they were clearly timely

because they filed their motion almost a month before debtors filed their objections in August 1985.

Claimants argument is disingenuous, however, because it is apparent from other litigation between claimants and debtors that claimants knew that their claims would be contested. Aside from the obvious fact that it would be extremely unusual for anyone to acquiesce to over $700 million in claims allegedly owed due to misrepresentation, it is evident that the claimants were in fact on notice that the claims would be contested. On February 19, 1985, claimants filed a third-party complaint against Baldwin in MDL 581, alleging claims for contribution and indemnity similar to those alleged in the proof of claim filed in Baldwin's Chapter 11 proceedings. Since that time, claimants and debtors have been engaged in a series of maneuvers related to the claims. For details regarding these events, *see In re Baldwin-United Corp. (Single Premium Deferred Annuities Insurance Litigation)*, 765 F.2d 343 (2d Cir. 1985); *Baldwin-United Corp. v. Named Defendants (In re Baldwin-United Corp.)*, 48 B.R. 901 (Bankr.S.D.Ohio 1985).

In light of this background, it is difficult to believe that claimants were unaware of the likelihood that Baldwin would contest claimants' claims, either in the bankruptcy court or elsewhere. The reason claimants filed this motion when they did was not because they did not know that Baldwin would object to their claims, but because they thought they were winning the battle until June 17, 1985. On that day the Second Circuit Court of Appeals vacated the order of the Southern District of New York which had enjoined debtors from seeking any relief from the bankruptcy court, or any other court, with regard to claimants' third-party complaints in MDL 581. *In re Baldwin-United Corp. (Single Premium Deferred Annuities Insurance Litigation)*, 765 F.2d 343 (2d Cir.1985). Therefore, claimants did have at least constructive notice that debtors would object to their claims long before the date that they ultimately filed the instant motion.

Moreover, as claimants admitted during the hearing before this Court there was no procedural barrier preventing them from filing this motion sooner (doc. 8 at 4–5). In light of the ample previous opportunity to raise this issue, therefore, we do not credit claimants' argument that the motion is timely in the sense that it was filed as soon as practicable.

Although we think that the instant motion represents a clear case of a motion that was not filed promptly, we are further convinced that it must be held to be untimely because of the current status of the Baldwin reorganization proceedings. Recently Baldwin filed its proposed plan for reorganization, and its disclosure statement has also been approved. In light of the January 15, 1986 deadline for confirmation of the plan, the large amount of money involved, the complexity of the plan, and the possibility of liquidation should the plan not be confirmed by that date, it is particularly important to avoid any unnecessary delay in the proceedings. To that end we deem it particularly important to apply the timeliness requirement strictly. Therefore, because we find that claimants' motion was not filed at the earliest reasonable opportunity and because we have determined that granting it now might seriously delay the Baldwin proceedings, we conclude that it is not timely.

## B. *Consideration of Non-Bankruptcy Federal Laws*

Finding claimants' motion to be untimely would by itself be an adequate ground for denying the motion to withdraw the reference to the bankruptcy court. Nonetheless we believe it is important to set out another substantial and independent ground on which their motion may be denied. Our second reason for denying claimants' motion is that resolution of their claims against Baldwin by the bankruptcy court does not require withdrawal because its resolution will not necessarily require substantial and material consideration of non-bankruptcy federal law.

The language of § 157(d) is extremely broad, requiring the district court to withdraw *any* proceeding that has been referred to the bankruptcy court "if the court determines the resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Ostensibly, this provision applies to all proceedings arising under title 11 that are referred to the bankruptcy court by the district court, including all core proceedings.

Despite this broad language, however, the legislative history of this subsection indicates that Congress did not intend § 157(d) to be "an escape hatch through which most bankruptcy matters will be removed" from bankruptcy courts. 130 *Cong.Rec.* H1850 (daily ed. March 21, 1984) (statement of Rep. Kramer). In response to a question about the scope of § 157(d), one of the sponsors of this provision stated that:

This language is to be construed narrowly. It would, for example, mean *related causes* which may require consideration of both title 11 and other Federal laws including cases involving the National Labor Relations Act, civil rights laws, Securities and Exchange Act of 1934, and similar laws.

Now, for example, some question arises: Would this affect existing cases involving asbestosis victims against manufacturers? The answer is no. Those are essentially State issues. *They are related to the core bankruptcy and will be determined by the bankruptcy judge;* they will not be recalled on that basis.

130 *Cong.Rec.* H1850 (daily ed. March 21, 1984) (statement of Rep. Kastenmeier). (Emphasis added.)

A similar view is expressed in a Senate Report discussing § 157(d), as follows:

Recall by the district court ... is mandatory in two instances—in any proceeding involving a claim or cause of action which is not one arising under title 11; and (2) in any proceeding where the district court determines that Federal laws regulating organizations or activities affecting interstate commerce are involved—the Committee intends that this second instance of mandatory recall be construed narrowly—basically to cover only those organizations or activities which immediately and directly affect interstate commerce.

S.Rep. No. 55, 98th Cong., 1st Sess. at 16.

These statements suggest that § 157(d) was not designed as a means for removing core bankruptcy proceedings from the bankruptcy court. Instead, it appears that Congress was concerned that they provide a method whereby "related causes" involving non-bankruptcy federal laws "immediately and directly" affecting interstate commerce would be withdrawn. With regard to core proceedings, the intent of Congress was for the bankruptcy judges to "act much like a magistrate" with the ability "to enter a final judgment ... in all proceedings integral to the core bankruptcy functioning [sic] of restructuring the obligations of the debtors and his creditors." 130 *Cong.Rec.* H1848 (daily ed. March 21, 1984) (statement of Rep. Kindness).

The view that core proceedings are per se not subject to mandatory withdrawal has been rejected by one district court. *In re White motor Corp.,* 42 B.R. 693, 701 (N.D.Ohio 1984). We also recognize that core proceedings are, at least theoretically, within the reach of § 157(d). Nonetheless, as a practical matter it is difficult to envision a situation when this would be appropriate.

For example, the allowance or disallowance of claims against the estate is a core proceeding, governed by 11 U.S.C. § 502. By definition, a claim is a "right to payment," 11 U.S.C. § 101(4)(A), so it will necessarily be based on some legal right that is external to the bankruptcy law. The right to payment upon which a claim is based could, for example, derive from a federal law regulating interstate commerce. The fact that the underlying claim is based on such a law does not, however, mean that consideration of that non-bank-

ruptcy law is *required* for determining whether to allow or disallow the claim. A claim is "deemed allowed" unless objected to, regardless of the underlying legal basis. 11 U.S.C. § 502(a). Even if an objection is raised, the claim must still be allowed unless it falls under one of the specific exceptions set forth in § 502(b). Whenever the bankruptcy court considers the validity of objections, it may have to consult general principles of law external to the bankruptcy law in order to determine whether the claim falls into one of the exceptions.

Surely Congress did not intend that the bankruptcy court's consideration of such general principles of law, even if they are federal laws regulating interstate commerce, would constitute a basis for mandatory withdrawal of the allowance of claims. To do so would defeat one goal of the bankruptcy court system, which is to have the bankruptcy judge decide matters within his area of expertise, *i.e.*, concerning the "proceedings integral to the core bankruptcy function of restructuring the obligations of the debtors."

In the vast majority of cases, non-bankruptcy federal laws regulating interstate commerce are implicated in the resolution of core proceedings only to the extent that they must be consulted by the bankruptcy judge in interpreting and applying the bankruptcy laws. Such incidental reference to non-bankruptcy laws is not what was contemplated by Congress when it fashioned the mandatory withdrawal provision of § 157(d). In virtually all cases, therefore, mandatory withdrawal will simply not be required for core proceedings because they will not require substantial consideration of non-bankruptcy law.

■ This construction of § 157(d) comports with the view of Senator DeConcini who stated that withdrawal is appropriate "only if the court determines that the assertion that other laws regulating organizations or activities affecting interstate commerce are in fact likely to be considered, and should not allow a party to use this provision to require withdrawal where such laws are not material to resolution of

the proceeding." 130 *Cong.Rec.* at 6081 (daily ed. June 19, 1984). Thus, where resolution of the issue involves predominantly the bankruptcy laws as opposed to other federal law, mandatory withdrawal is inappropriate.

■ The limited case law discussing § 157(d) also supports strict construction of when withdrawal is mandatory. A proceeding must be withdrawn under § 157(d) only if consideration of non-bankruptcy law is *required* for resolution of the proceeding. *In re White Motor Corp.*, 42 B.R. 693, 703 (N.D.Ohio 1984). Just because non-bankruptcy federal statutes might be considered is not sufficient. A motion to withdraw "should be granted only if the proceedings ... cannot be resolved without substantial and material consideration" of the non-bankruptcy laws. *Id.* at 704.

The few cases concluding that withdrawal was required have involved adversary proceedings *related to* a bankruptcy proceeding rather than core proceedings. *See, e.g., In re Continental Airlines Corp.*, 50 B.R. 342 (S.D.Tex.1985); *Michigan Milk Producers Ass'n v. Hunter*, 46 B.R. 214 (N.D.Ohio 1985). In fact, we are unaware of any instance in which a court has determined that a core proceeding had to be withdrawn from a bankruptcy court because it required consideration of non-bankruptcy federal laws.

■ The proceeding that claimants seek to have withdrawn from bankruptcy court involves the allowance or disallowance of their claims against Baldwin and the estimation of the claims in the event they are allowed. Claimants assert that the bankruptcy court's determination of their claims will necessarily require consideration of federal securities and racketeering laws, and should therefore be decided by a district court (Doc. 1, at 17–19; Doc. 6, at 11–18). We disagree.

Baldwin's liability to claimants will, of course, ultimately turn on some consideration of federal law. But the determination of that liability will not be decided by the bankruptcy court. That issue will ultimate-

ly and appropriately be determined by a district court, probably in MDL 581. The decision of whether to allow claimants' claims in bankruptcy court, however, will not necessarily require consideration of other federal laws. Rather, the bankruptcy court will determine whether the claims are allowable by reference to 11 U.S.C. § 502(b) and general principles of law construing that section.

In this case debtors have raised three objections to claimants' claims, two of which rest exclusively on interpretations of the bankruptcy code. Debtors' first objection is that claimants cannot share in the estate under 11 U.S.C. § 502(e)(1)(B) because their claim for contribution is contingent. Because claimants have not paid the primary claimants in this case, that is, the SPDA policyholders, debtors contend that the claim must be disallowed. Second, debtors argue that claimants' claims are basically claims for loss of interest to policyholders resulting from the rehabilitation proceedings of debtors' insurance companies. Debtors argue that the claims must be disallowed because § 502(b)(2) of the bankruptcy code prohibits collection of "unmatured interest." Only debtors' third objection, that indemnity would be inappropriate even outside of bankruptcy and thus is barred by 11 U.S.C. § 502(b)(1), involves consideration of law outside of the bankruptcy code. According to debtors, however, even that objection requires reference only to recent case law interpreting the equitable doctrines of indemnity and contribution, with only incidental reference to any federal statutes.

We are in no position to determine the validity of these objections on the record now before us, but we can say that we determine they will not necessarily require "substantial and material consideration" of non-bankruptcy law for their resolution. Consequently, it is appropriate that the determination of whether to allow the claims be made by the bankruptcy court whose expertise will be useful in deciding whether the objections are "groundless" as claimants' contend. If claimants are correct, of course, the bankruptcy court will be obliged to allow them pursuant to § 502(b). If the claims are disallowed, claimants will, of course, be able to appeal the decision to the district court pursuant to 28 U.S.C. § 158.

If claimants' claims are allowed, they must be estimated by the bankruptcy court pursuant to 11 U.S.C. § 502(c). An estimation proceeding is also a core proceeding, 28 U.S.C. § 157(b)(2), and it is required for "any contingent or unliquidated claims, the fixing or liquidation of which ... would unduly delay the administration of the case" 11 U.S.C. § 502(c). At an estimation hearing, the bankruptcy court would not decide liability or assign a permanently fixed value for the claim. Rather, he would estimate the *likelihood* of liability and the *probable* value of that liability. The estimated amount would be the amount that claimants would be entitled to vote for or against confirmation of Baldwin's reorganization plan. If the plan is confirmed the estimated amount would be set aside pending the determination of liability and the liquidation of the claim, which would not occur in a bankruptcy court. If liability is ultimately found, claimants would then be able to receive payment up to the amount of the judgment or the estimated value, whichever is lower.

It is admittedly difficult to see how the bankruptcy court could estimate claimants' claims without some consideration of federal securities laws. Nonetheless, it is evident that estimation is not equivalent to a *resolution* of the underlying claim. As already noted, the estimation proceeding is purely to facilitate efficient administration of the bankruptcy proceeding and to prevent undue delay; it does not resolve the issue of debtors' liability to claimants or the actual amount of their liability.

Consequently, for all the reasons discussed above, we conclude that § 157(d) does not require us to withdraw the bankruptcy court proceedings in which the allowance and estimation of claimants' claims will be decided. Moreover, we see absolutely no basis on which we might conclude

that those proceedings should be withdrawn from the bankruptcy court "for cause shown." This is clearly a case in which the interests of both the parties and the public will be best served if decisions involving the core bankruptcy proceedings are made by the judge whose particular expertise will ensure the correct result.

## ORDER

Accordingly, the motion to withdraw the reference is hereby denied because it is not timely and because the resolution of the proceedings sought to be withdrawn does not require consideration of other federal laws regulating interstate commerce.

SO ORDERED.