**In re CAMDEN ORDNANCE MFG. CO. OF ARKANSAS, INC., Debtor in Possession.**

**Camden Ordnance Mfg. Co. Of Arkansas, Inc., Appellant,**

**v.**

**United States Trustee, Appellee.**

**Bankruptcy No. 99–13203. Adversary Nos. 99–CV– 4223, 99–CV–4224.[1]**

United States District Court, E.D. Pennsylvania.

March 9, 2000.

John J. Koresko, V, Baldwin Renner Clark & Koresko, King of Prussia, PA, for Camden Ordnance Mfg. Co. of Arkansas, Inc., Debtor/Appellant.

W.J. Winterstein, Jr., Harvey, Pennington, Herting and Renneisen, Ltd., Philadelphia, PA, for Highland Park, Creditor.

Alan C. Kessler, Bergenfield, NJ, for Creditors Committee, Creditor.

Doron A. Henkin, Toll, Ebby, Langer & Marvin, Philadelphia, PA, for Israel Military Industries, Ltd., Movant.

Ron Williams, Dallas, TX, for ATF, Interested Party.

Ralph Avery, Arlington, VA, Interested Party, pro se.

Frederic Baker, Philadelphia, PA, U.S. Trustee, pro se.

Frederic J. Baker, Philadelphia, PA, for Particia A. Staiano, trustee.

## *MEMORANDUM*

ANITA B. BRODY, District Judge.

Before me is (1) an appeal from the Bankruptcy Court's order of July 21, 1999 converting the Appellant Camden Ordnance Manufacturing Co. of Arkansas, Inc.'s ("Camden") voluntary Chapter 11

case to a Chapter 7 case; (2) Camden's motion to withdraw the reference pursuant to 28 U.S.C. § 157(d); and (3) Camden's motion to strike the brief of Israel Military Industries, Ltd. ("IMI"). I will affirm the bankruptcy court's ruling, deny Camden's motion to withdraw the reference and deny Camden's motion to strike the brief of IMI.

## I. PROCEDURAL BACKGROUND

Camden was in the business of manufacturing ordnance and munitions. On March 11, 1999, Camden filed a voluntary Chapter 11 bankruptcy petition. On June 23, 1999, the United States Trustee ("UST") filed a motion before the bankruptcy court to dismiss or convert the Chapter 11 action to a Chapter 7 case pursuant to 11 U.S.C. § 1112(b). On July 14, 1999, at the hearing for the UST's Motion, the UST requested that the case be converted rather than dismissed. On the same day, Camden indicated that it would agree to the dismissal but not the conversion and requested leave to file a motion to dismiss. The bankruptcy court permitted Camden to file a motion to dismiss and rescheduled the hearing. On July 21, 1999, a hearing was held on both parties' motions and the bankruptcy court denied Camden's motion to dismiss and granted the UST's motion to convert the case to a Chapter 7 proceeding. On July 28, 1999, Camden filed notices of appeal from the bankruptcy court's orders granting the UST's motion to convert and denying Camden's motion to dismiss. On the same day, Camden filed, in the bankruptcy court, a motion to stay pending the appeal of the bankruptcy court's order to convert. Camden's motion to stay was denied by the bankruptcy court. The denial of the stay was appealed to me. On August 18, 1999, after conducting a conference in chambers, I issued a temporary stay pending further order by the court. On August 26, 1999, after the parties had submitted briefs and after careful review of those briefs, I ordered the temporary stay lifted and on August 31, 1999, I denied Camden's motion for stay pending appeal.

## II. STANDARD OF REVIEW

■■■ This court has appellate jurisdiction over final orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). Courts have generally held that the decision regarding whether to convert or dismiss a Chapter 11 bankruptcy case pursuant to § 1112(b) is reviewed only for abuse of discretion. *See In re Mazzocone*, 180 B.R. 782, 785 (E.D.Pa.1995), *see also* 7 COLLIER ON BANKRUPTCY at 1112–21 (15th ed. revised 1999) (stating that "[i]n general, decisions granting or denying relief under section 1112(b) are reviewed on appeal under the abuse of discretion standard."). Discretion will be found to have been abused only when "the judicial action is arbitrary, fanciful or unreasonable which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." *In re Blackwell*, 162 B.R. 117, 119 (E.D.Pa.1993). Factual findings relied upon by the bankruptcy court in exercising its discretion are reviewed under a clearly erroneous standard and any legal conclusions relied upon by the bankruptcy court are subject to plenary review. *See In re Mazzocone*, 180 B.R. at 785; *see also In re Siciliano*, 13 F.3d 748, 750 (3rd Cir.1994).

## III. DISCUSSION

### A. Appeal from the Bankruptcy Court's order of July 21, 1999 converting Camden's voluntary Chapter 11 case to a Chapter 7 case

In its appeal Camden claims that (i) the bankruptcy court did not have cause for conversion under § 1112(b) because the court did not find both dissipation of asserts and inability to rehabilitate; (ii) the bankruptcy court misapplied the "best interest of the creditors" test; (iii) there was no evidence to support the bankruptcy court's conclusion that Camden's principal could not be trusted; (iv) Camden had a right to dismiss its voluntary bankruptcy

case; (v) Camden's right to dismiss its voluntary bankruptcy case is a property right which is not abrogated by the bankruptcy code; (vi) the bankruptcy judge did not have the power under Art. I to deprive Camden of the common law right to voluntarily dismiss its bankruptcy case; and (vii) depriving Camden of the right to dismiss is tantamount to an involuntary bankruptcy proceeding or involuntary servitude. I will summarize Camden's claims as follows: (1) the bankruptcy court misapplied § 1112(b) and therefore, Camden's voluntary Chapter 11 case should have been dismissed instead of converted to a Chapter 7 case and (2) Camden had a right to dismiss its own voluntary Chapter 11 case.

### 1. The bankruptcy court did not abuse its discretion in its application of § 1112(b)

 Section 1112(b) of the Bankruptcy Code provides that:

> [O]n request of a party in interest or the United States trustee or bankruptcy administrator and after notice and a hearing, the court may convert a case under [Chapter 11] to a case under chapter 7 of this title or may dismiss a case under [Chapter 11], whichever is in the best interest of creditors and the estate, for cause . . .

11 U.S.C. § 1112(b). A motion filed under § 1112(b) necessitates a two-step analysis: (1) to determine if "cause" exists to either dismiss the Chapter 11 case or convert the Chapter 11 case to a Chapter 7 proceeding and (2) to determine which option, dismissal or conversion, is in the "best interest of creditors and the estate." *See In re Superior Siding & Window,* 14 F.3d 240, 242 (4th Cir.1994) (citing *In re Mechanical Maintenance, Inc.,* 128 B.R. 382, 386 (E.D.Pa.1991)). In evaluating the first part of this two-step inquiry, § 1112(b) provides ten factors that may constitute "cause." The factors are:

> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; (3) unreasonable delay by the debtor that is prejudicial to creditors; (4) failure to propose a plan under section 1121 of this title within any time fixed by the court; (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan; (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title; (7) inability to effectuate substantial consummation of a confirmed plan; (8) material default by the debtor with respect to a confirmed plan; (9) termination of a plan by reason of the occurrence of a condition specified in the plan; or (10) nonpayment of any fees or charges required under chapter 123 or title 28.

11 U.S.C. § 1112(b). The ten grounds that may constitute "cause" are non-exclusive and therefore, "[a] court may consider other factors as they arise and may 'use its equitable powers to reach an appropriate result in individual cases.'" *Mechanical Maintenance,* 128 B.R. at 386 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 117, reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5903) (citations omitted). Second, once cause is established, the decision of whether to convert to Chapter 7 or dismiss is committed to the discretion of the bankruptcy court. The conversion or dismissal must be based on the "best interest of creditors and the estate." *Id.*

### i. Cause for conversion or dismissal

Camden first contends that the bankruptcy court did not have "cause" for conversion under § 1112(b). Camden asserts that the bankruptcy court failed to demonstrate that cause to convert existed applying § 1112(b)(1), "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation." Camden claims that the bankruptcy court cited no factors that established the un-

likelihood of Camden's rehabilitation, there was no discussion as to whether a plan could be confirmed and there was no evidence of diminution of the value of Camden's estate.

Because Camden filed a motion to dismiss pursuant to § 1112(b), the bankruptcy court may have reasonably interpreted Camden's own request to dismiss the Chapter 11 case as evidence that the parties agreed that "cause" for conversion or dismissal existed. Camden's motion to dismiss states in part that "[t]he Debtor seeks dismissal as it is in the best interest of the creditors and the estate, there being no need to incur further administrative expenses upon abandonment of the premises." Camden Mot. to Dismiss at 2. During the hearing on Camden's motion to dismiss and the UST's motion to dismiss or convert, Camden's principal, Jerome Roman, testified that "we don't want it [Camden] to stay in Chapter 11." Tr.[2] at 15. Therefore, it seems that the parties agreed that "cause" existed to convert or dismiss the case, the only outstanding issue was whether the case should be dismissed or converted.

Additionally, even if Camden's claim is valid, "cause" for conversion or dismissal may exist for a multitude of reasons aside from those under § 1112(b)(1). Section 1112(b)(1) is just one of the ten enumerated examples that may constitute "cause." Furthermore, the bankruptcy court may find "cause" for conversion or dismissal for reasons beyond the ten enumerated examples in § 1112(b). For example, the Third Circuit recently held that a Chapter 11 petition is subject to dismissal for "cause" under § 1112(b) if it is not filed in good faith. *See In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3rd Cir.1999). Moreover, arguably, cause for conversion or dismissal existed under § 1112(b)(1).

First, continuing loss or diminution of the estate existed as Camden had ceased operations and the inventory of ordnance and munitions needed to be properly and expeditiously disposed. Second, there was an absence of a reasonable likelihood of rehabilitation evidenced by the bankruptcy court's concern regarding the oversight ability of Camden's principal, Roman.

### ii. Best interest of creditors and the estate

Camden next contends that conversion was not in the "best interest of creditors and the estate." In the bankruptcy court's August 3, 1999 memorandum, Judge Scholl explained his decision to convert, rather than dismiss, this case. *See In re Camden Ordnance Mfg. Co. of Arkansas, Inc.*, No. 99–13203, slip op. at 4–5 (Bankr.E.D.Pa. Aug. 3, 1999). First, because Camden ceased operations a reorganization to salvage its business was infeasible. *See id.* at 4 (citing 7 COLLIER ON BANKRUPTCY ¶ 1112.04[4][a], at 1112–25–1112–26 (forcing a liquidation of a viable business operation is the primary consideration against conversion of a Chapter 11 case)). Second, all creditors present at the hearing, as well as the UST, favored conversion over dismissal. *See id.* at 4–5. Third, the bankruptcy court was unimpressed with the oversight exercised over Camden and its assets by Camden's president, Roman. *See id.* at 5. Significantly, Judge Scholl noted that Camden had, without permission from the bankruptcy court as required by 11 U.S.C. §§ 364(b), (c), (d), borrowed approximately $45,000 from affiliates to make payroll and now sought administrative claims for these loans.[3] Judge Scholl stated that "the payments for payroll were themselves open to question because of the Debtor's cessation of operations." *Id.* at 5. Reviewing Judge Scholl's decision for abuse of discretion, I will af-

---

2. All citations to the transcript are to the July 21, 1999 hearing, in bankruptcy court, regarding this case.

3. Judge Scholl noted that debtor-in-possession financing may be approved *nunc pro tunc* in certain limited circumstances. *See In re City of Wide Press, Inc.*, 102 B.R. 431, 436–37 (Bankr.E.D.Pa.1989).

firm his decision for the following reasons: (1) there was substantial evidence supporting Judge Scholl's concern regarding Roman's ability to oversee the liquidation of Camden; (2) Judge Scholl considered relevant parties interests in deciding to convert the case; and (3) the existence of possible environmental and safety concerns favored conversion.

There was substantial evidence in the bankruptcy court record to support the bankruptcy court's concern regarding Roman's ability to oversee the liquidation of Camden. For example, Roman did not know if the lease with Highland Industrial Park, Inc. ("Highland"), Camden's landlord, was extended. Roman testified, at the hearing of the UST's motion to convert, that he did not recall if he signed a letter extending Camden's lease with Highland for an additional year. *See* Tr. at 34–35. Later testimony revealed, however, that the lease was extended from December 1998 to December 1999.[4] *See id.* at 52–53. In addition, Roman testified that, without permission of the bankruptcy court, Camden borrowed money from affiliates to pay salaries after filing the voluntary Chapter 11 petition for bankruptcy.[5] *See id.* at 40–41. A motion was filed on behalf of Camden to reimburse its affiliates for this loan. *See id.* at 41. As Judge Scholl noted "[t]he payments for payroll were themselves open to question because of the Debtor's cessation of operations." *See In re Camden Ordnance* at 5. Finally, Roman testified that Camden would have done a Chapter 11 liquidation plan if the UST's had not moved to convert or dismiss the case. At best, Roman equivocated on

the issue of Camden's interest in pursuing Chapter 11 status. *See* Tr. at 14–15. Judge Scholl stated that "if you [Roman] had gone ahead with the plan, the U.S. Trustee's motion wouldn't have been granted. So I can't see how that could've been any kind of cause factor in changing your goals." *Id.* at 14. Roman acknowledged that "we don't want it [Camden] to stay in Chapter 11."[6] *Id.* at 15. In sum, because of Roman's testimony regarding his oversight of Camden's liquidation conversion of this case was appropriate.

The bankruptcy court evaluated relevant parties interests in deciding to convert this case. Section 1102 of the Bankruptcy Code provides that the UST shall appoint a committee of creditors holding unsecured claims and that such committee shall ordinarily consist of creditors holding the seven largest claims. Here, only three creditors indicated an interest in serving on the creditors committee and all three creditors were appointed. Each creditor is a fiduciary of all other unsecured creditors and the estate. The Committee did not hire an attorney and therefore, Alan Kessler, the Chairman of the Committee, had standing to appeal and be heard on behalf of the Committee. Additionally, all creditors present at the July 21, 1999, hearing in addition to the UST, favored conversion over dismissal. *See In re Camden Ordnance* at 4.

Camden contends that the preferences for conversion, expressed by IMI, Kessler, the UST and Highland at the July 21, 1999 hearing, should have been disregarded by

---

**4.** Camden argues that the reason Roman could not remember if Highland's lease was extended was Roman's legal position that the extension was ineffective.

**5.** Camden claims that it convinced insiders to advance $40,000 that Camden did not have to repay and the estate was thereby freed from Camden's operating expenses for more than three months. Roman stated at the July 21, 1999 hearing, however, that insiders were "lending—they were loaning the company money to pay salaries." Tr. at 41. Roman

did not mention that Camden did not have to repay this loan.

**6.** Camden contends that the case should not have been converted because the bankruptcy court suggested that it would not have granted the UST's motion to convert had Camden filed its Chapter 11 liquidation plan, however, the plan was not due until July 30, 1999. As illustrated above, however, Roman testified that Camden did not want to stay in Chapter 11.

the bankruptcy court. Camden asserts that IMI was not a creditor and therefore, Judge Scholl should not have considered IMI's support of conversion. Camden argues that because IMI and Camden had settled their claims against each other before the July 21, 1999 hearing IMI was not a "creditor." Camden also contends that Alan Kessler's testimony should have been disregarded because the Committee was corrupt and his participation was not previously disclosed by the UST. Camden contends that Kessler was not a true representative of the Committee because, among other reasons, the Committee had never had a "full" meeting and Kessler stated that he was Chairman by default. Tr. at 74. Additionally, Camden points out that when asked why he thought Camden's case should be converted instead of dismissed, Kessler stated that "[i]n fact, I don't think there's any basis." Tr. at 69. Camden further contends that the preference of the UTS should have been given little weight because the UST did not introduce sufficient evidence to prove its case, and in fact, the evidence favored Camden. Finally, Camden asserts that conversion of this case only benefitted, the landlord, Highland because of its bankruptcy priority, whereas dismissal would have put all the creditors on an equal plane in state court.

Judge Scholl's consideration of the preferences of IMI, Kessler (as the Committee representative), the UST and Highland were appropriate. First, all of the creditors present were parties to the proceeding. Other than an objection to Kessler's testimony, Camden did not object to the standing of any of the other parties. Because Camden did not object to these parties in the bankruptcy court, it is barred from raising this issue on appeal. *See Fonder v. U.S.*, 974 F.2d 996, 999 (8th Cir.1992) (In an appeal from the district

court judgment affirming the bankruptcy court's dismissal of the debtor's Chapter 7 petition, the court refused to address an issue raised at oral argument because it was not raised in the bankruptcy court).

 In any event, Camden's objections are without merit. The bankruptcy court appropriately considered the opinion of IMI. The text of § 1112(b) requires the bankruptcy court to evaluate the "best interest of creditors and the estate." Therefore, while IMI may not have been a creditor at the point its viewpoint was considered by the bankruptcy court,[7] IMI was a "party in interest."[8] Therefore, IMI's preference for conversion was properly evaluated in determining what was in the best interest of the estate. Camden, also fails to note the context of Kessler's statement regarding why the Committee favored conversion. Kessler continued to explain the basis for the Committee's support of conversion "I think it's just based on the information that we have and the way things have been conducted to date that we feel we're better served by the Trustee." Tr. at 69. Kessler's representation of the Committee was legitimate. For example, Kessler acknowledged that his role was to "represent all of the Creditors" as a fiduciary for all the other Unsecured Creditors. Tr. at 60. Kessler also stated that "[w]e [the Committee] definitely have a position against dismissal." Tr. at 64. When asked how the Committee reached its decision to support conversion, Kessler stated that "[w]e reviewed all the documents that we had been presented with to date, and we just felt that any moneys that would be available to the Creditors would be more likely to come our way if administered by a Trustee as opposed to the Debtor." Tr. at 65. In sum, while the Committee never had a full meeting, there was no evidence presented

---

7. Section 101(10) of the Bankruptcy Code provides, in part, that a " 'creditor' means— (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor ...". *Id.*

8. IMI's status is addressed in more detail within the discussion of Camden's motion to strike the brief of IMI.

that Kessler was not the legitimate Chairman of the Committee and thus, his testimony was relevant to the bankruptcy court's determination to convert the case. Tr. at 71. Camden's argument regarding the UST's preference is without merit. The text of § 1112(b) states that the court may convert or dismiss a Chapter 11 case on the request of the UST. Therefore, consideration of the UST's preference is a logical interpretation of § 1112(b). Additionally, the UST introduced sufficient evidence to support conversion as evidenced above in the discussion of Roman's testimony. Finally, Camden's argument that conversion of the case only benefited Highland is unsupported. While Highland may have been in a position of greater priority in bankruptcy court than in state court, this does not justify disregarding Highland's preference for conversion. Furthermore, the creditors favored conversion and the creditors are the best judge of their own best interests. Therefore, the bankruptcy court's finding that conversion was in the best interest of the creditors is supported by the record.[9]

The fact that Camden was in the business of manufacturing ordnance and munitions supported conversion rather than dismissal. Roy Ledbetter, the president of Highland, testified that "[t]here are explosives on site and there may very well be

other materials such as waste, oil and other materials . . . It is my concern that there are some hazardous materials on site." Tr. at 110. Roman explained that "[a]nything that we produced was explosive, so anything that would be left there would be explosive." Tr. at 45. Judge Scholl admitted the depositions of a Bureau of Alcohol, Tobacco and Firearms ("ATF") representative, William Buford, and an Arkansas Department of Environmental Quality ("ADEQ") representative, Ron Love in support of the UST's motion for conversion. Tr. at 93–103. Additionally, the ATF filed a response to Camden's motion to dismiss stating that the ATF "found numerous munitions and/or explosives at the site, some of which were not properly stored . . . Also present were several 55 gallon drums which are marked 'hazardous.' The munitions and/or explosives were secured by the [ATF] in several of the debtor's storage magazines, which were than secured by a lock." ATF Resp. at 1. The ADEQ filed objections to Camden's motion to dismiss stating that "ADEQ's inspections both before and after the commencement of this action have documented violations by the Debtor of applicable regulations that pertain to the storage of hazardous wastes." ADEQ Resp. at 1. The ADEQ noted that "[i]n the event the Debtor is allowed to dismiss this

9. Camden also maintains that this case was essentially a two party dispute and therefore, should have been dismissed. *See In re SB Properties, Inc.*, 185 B.R. 206, 208–09 (Bankr. E.D.Pa.1995), *appeal dismissed*, 185 B.R. 198 (E.D.Pa.1995) (If a bankruptcy case involves what is basically a two-party dispute that can adequately be resolved in state court, the case should be dismissed). Camden claims the dispute was really between Camden and Highland. Judge Sigmund, in evaluating a similar argument in *In re G & G Transport, Inc.*, No. 98–30860, 1998 WL 898835 (Bankr.E.D.Pa. Dec.22, 1998), stated that "[c]ontrary to the cases presented by corporate Debtor's counsel, I find no support for this argument that dismissal is warranted because these cases present essentially a two party dispute." *Id.* at *3. Judge Sigmund explained that:

in cases where the bankruptcy court's services are necessary to reorganize a debtor

with true financial problems, there is a bankruptcy purpose and the case should not be dismissed. . . . However, where there is no bankruptcy purpose and the bankruptcy case is mere forum shopping, it should be dismissed and the parties sent to the appropriate jurisdiction to vindicate their rights. . . . While the Bank is clearly the Debtors' biggest and only active foe, there are other creditors of these estates who are affected and stand to benefit from a reorganization. Moreover, the Debtors have financial problems that could be ameliorated with bankruptcy relief.

*Id.* at *3. Similarly, in this case, there are other creditors aside from Highland that stand to benefit from reorganization and Camden has financial problems that may be ameliorated with bankruptcy relief.

proceeding and avoid the expense associated with removing the hazardous wastes that it has generated and that are currently stored at its property, then ADEQ could be forced to incur these costs." *Id.* at 2. Therefore, the ADEQ concluded that "dismissal of this proceeding ... is not in the best interest of the creditors and the estate. The assets should be used to address priority claims for removal and proper disposal of hazardous wastes was well as investigating the nature and extent of any contamination at the property and any clean up costs that are necessary as a result of the Debtor's activities." *Id.* at 2–3. Consequently, the reasonableness of Judge Scholl's conversion order is strengthened by possible environmental and safety concerns.

In sum, the bankruptcy court did not abuse its discretion in converting this case instead of dismissing Camden's voluntary Chapter 11 proceeding. Judge Scholl, in *In re Mazzocone*, 183 B.R. 402 (Bankr. E.D.Pa.1995), noted "considerable authority for the proposition that ... any decision in a situation where sufficient factors exist to justify either a decision to convert or one to dismiss a case [pursuant to § 1112(b)], the exercise of its discretion by the bankruptcy court should be respected." *Id.* at 417. Similarly, Judge Scholl cited "considerable authority for the proposition that a bankruptcy court is not required to explain the reasons for dismissal or conversion in detail." *Id.* Judge Scholl's decision to convert rather than dismiss this case does not violate the highly deferential "abuse of discretion" standard. Judge Scholl's decision is neither "arbitrary, fanciful nor unreasonable."

**2. Camden did not have an absolute right to dismiss its own voluntary Chapter 11 case**

The plain meaning of § 1112(b) allows the bankruptcy court to convert a debtor's voluntary Chapter 11 case when it is in the best interest of creditors and the estate, even if the debtor

opposes conversion and favors dismissal. The first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. The inquiry must stop if the statutory language is unambiguous and the statutory scheme is coherent and consistent. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (citations omitted). The text of § 1112(b) states in part that "the court may convert a case under this chapter [Chapter 11] to a case under chapter 7 of this title or may dismiss a case under this chapter [Chapter 11], whichever is in the best interest of creditors and the estate ...". 11 U.S.C. § 1112(b). Notably, the language of the statute does not indicate that a debtor's motion to dismiss its own Chapter 11 case must be given even if the bankruptcy court decides it is not in the best interest of creditors and the estate. Legislative history of § 1112(b) supports this interpretation of the statute. The Senate report states that this section "gives wide discretion to the court to make an appropriate disposition of the case *sua sponte* or upon motion of a party in interest" and to allow the court to "use its equitable powers to reach an appropriate result in individual cases." S.Rep. No. 989, 95th Cong., 2nd Sess.1978, 1978 U.S.C.C.A.N. 5787, 5903. Therefore, the plain meaning of § 1112(b) allows a court to convert a debtor's voluntary Chapter 11 case if it is in the best interest of creditors and the estate, even if the debtor favors dismissal rather than conversion.

Two prominent bankruptcy treatises support an interpretation of § 1112(b) allowing a bankruptcy court to convert a debtor's voluntary Chapter 11 case although the debtor favors dismissal. First, *Norton Bankruptcy Law and Practice* states in relevant part that "the debtor has no absolute right to dismiss a Chapter 11 case." 4 NORTON BANKRUPTCY LAW AND PRACTICE 2D § 82:1 at 82–2 (1997, supplemented 1999) (citing Federal Rule of

Bankruptcy Procedure 1017(a)[10]). Similarly, *Collier on Bankruptcy* states that "the debtor's request under section 1112(b) is subject to the same standards as a request by any other party. Accordingly, the debtor's request will not be granted automatically, and the debtor must demonstrate cause for the requested relief." 7 COLLIER ON BANKRUPTCY ¶ 1112.04[9][a] at 1112–55.

■ Camden claims that a debtor bringing a voluntary Chapter 11 case has a right, upon its motion, to have its voluntary case dismissed unless it will result in plain legal prejudice to creditors. In *Mechanical Maintenance*, Judge McGlynn evaluated a ruling of the bankruptcy court dismissing the Chapter 11 bankruptcy case of a debtor. *See* 128 B.R. at 384. The court considered whether the bankruptcy court appropriately applied § 1112(b). Judge McGlynn explained that:

> the court was wrong to hold that a debtor's voluntary motion to dismiss is reflexively to be granted whenever cause exists but is not negated by a showing of "plain legal prejudice" to creditors. Rather, once cause is ascertained, section 1112(b) requires a court to move to a second, analytically separate step and to base its decision whether to dismiss or convert on "the best interest of creditors and the estate." Hence, a court wishing to convert a case because conversion appears to be in the best interest of creditors need not dismiss the case simply because the creditors have not demonstrated plain legal prejudice.

*Id.* at 388. Therefore, the court held that "[a]nalyzed in the light of the 'best interest of creditors and the estate' test, the appellants' compelling legal argument that their claims were entitled to superiority ... and that the debtor's case should, consequently, have been converted to a case under

Chapter 7 deserved the bankruptcy court's full consideration." *Id.* Similarly, in *In re G & G Transport, Inc.*, No. 98–30860, 1998 WL 898835 (Bankr.E.D.Pa. Dec.22, 1998), Judge Sigmund, explained that "[u]nlike Chapter 7 and 13, voluntary dismissal in Chapter 11 is not a debtor's right but rather turns on whether the relief is in the best interest of creditors." *Id.* at *4; *see also In re Continental Holdings, Inc.*, 170 B.R. 919, 927 (Bankr.N.D.Ohio 1994) (holding that "[t]he express language of § 1112(b) indicates that a debtor's motion to dismiss should not 'reflexively ... be granted whenever cause exists.'") (citing *In re Mechanical Maintenance*, 128 B.R. at 387); *In re Mazzocone*, 180 B.R. 782, 786 (E.D.Pa.1995) (Judge Reed remanded a decision of the bankruptcy court dismissing a Chapter 11 case, where debtor supported dismissal. Judge Reed found that the bankruptcy court abused its discretion in dismissing the voluntary Chapter 11 case because the court "failed to properly consider all of the alleged adverse effects to [debtor's partner's] interests of dismissal."). Therefore, considering Judge McGlynn's decision in *Mechanical Maintenance* and the text of § 1112(b), I find that the standard for evaluating a debtor's motion to dismiss its own voluntary Chapter 11 proceeding is the "best interest of creditors and the estate," rather than "plain legal prejudice" to the creditors. As discussed above, the bankruptcy court, in this case, did not abuse its discretion in finding that conversion rather than dismissal was in the best interest of creditors and the estate.

Camden raises a multitude of additional arguments in support of its position that a debtor bringing a voluntary Chapter 11 case should be permitted to dismiss its case. First, Camden asserts that its right to dismiss is a property right that cannot be abrogated by the bankruptcy court.

---

10. Federal Rule of Bankruptcy Procedure 1017(a) states in part that: "Except as provided in §§ 707(a)(3), 707(b), 1208(b) and 1307(b) of the Code, and in Rule 1017(b), (c) and (e), a case shall not be dismissed on motion of the petitioner, for want of prosecution or other cause, or by consent of the parties, before a hearing on notice as provided in Rule 2002." *Id.*

Next, Camden contends that the bankruptcy judge does not have the power under Art. I to deprive Camden of a common law right, like the right to voluntarily dismiss. Finally, Camden asserts that denial of the right to dismiss is tantamount to an involuntary bankruptcy proceeding or involuntary servitude. Camden makes such broad statements as "[k]eeping someone in court against his will begins to press against the boundaries of the Thirteenth Amendment" and "[p]rinciples of equal protection incorporated into the Fifth Amendment command that similarly situated individuals be treated similarly, unless Congress can relate the different treatment to some reasonable state interest." [11] Camden fails to develop its purported constitutional arguments. While Camden refers to Article I, the Fifth Amendment and the Thirteenth Amendment, Camden fails to explain, specifically, how these constitutional provisions could possibly be violated by the application of § 1112(b). Therefore, I will not address Camden's purported constitutional arguments.

 Moreover, there is no constitutional right of access to federal bankruptcy court. *See U.S. v. Kras,* 409 U.S. 434, 446–47, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Once a debtor submits to the jurisdiction of the bankruptcy court and avails itself of bankruptcy protections, the debtor must comply with the Bankruptcy Code. One of those rules is § 1112(b), allowing a bankruptcy court to convert a voluntary Chapter 11 case, even if a debtor wants the case dismissed. Camden was not compelled to seek protection in bankruptcy and thus, following the statutory framework of the Bankruptcy Code is a fair and necessary requirement for a debtor seeking the benefits of bankruptcy.

In sum, because I find that the bankruptcy court did not abuse its discretion, I will affirm the bankruptcy court's order to convert this case to a Chapter 7 proceeding.

**B. Camden's motion to withdraw the reference pursuant to 28 U.S.C. § 157(d)**

 In addition to the appeal discussed above, Camden brings a motion to withdraw the reference pursuant to 28 U.S.C. § 157(d). Section 157(d) provides in part that:

> The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

*Id.* The party seeking the withdrawal of the reference has the burden of going forward to show the grounds for withdrawal and bears the ultimate risk of non-persuasion. *See Young v. Snider,* No. 94–0005, 1994 WL 81955, *2 (E.D.Pa. March 11, 1994) (citing *Carr v. Michigan Real Estate Ins. Trust (In re Michigan Real Estate Ins. Trust),* 87 B.R. 447, 459 (E.D.Mich. 1988)). Three conditions must be met be-

---

**11.** Camden also cites the Eleventh Circuit's opinion in *In re Parklane/Atlanta Joint Venture,* 927 F.2d 532 (11th Cir.1991), in support of its position. *Parklane/Atlanta* held that Art. III bars a bankruptcy court from issuing a nonappealable order of dismissal or suspension under § 305 of the Bankruptcy Code. The version of § 305 evaluated by the Eleventh Circuit stated in part that: "An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise." Section 305, however, has since been amended to state in part that: "An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of title 28 or by the Supreme Court of the United States under section 1254 of title 28." Notably, § 305 now permits appeal to a district court, thus negating the problem described in *Parklane/Atlanta.* Similarly, here, as evidenced by this appeal, the bankruptcy court's order converting the case rather than dismissing the case, is obviously reviewable by an Art. III court.

fore mandatory withdrawal is appropriate: (1) the person seeking withdrawal must be a party to the proceeding; (2) the motion to withdraw the reference must be timely filed; and (3) resolution of the proceeding must require consideration of both the Bankruptcy Code and of non-bankruptcy federal statutes regulating interstate commerce. *See* 28 U.S.C. § 157(d); *see also In re Baldwin–United Corp.*, 57 B.R. 751, 753 (S.D.Ohio 1985). Mandatory withdrawal is only warranted when non-bankruptcy federal law is a "substantial and material consideration" in the resolution of the proceeding. *See Young*, 1994 WL 81955 at *2. Additionally, the non-bankruptcy federal laws must be necessary for the resolution of a case or proceeding and not simply a consideration in the proceeding. *See Michigan Milk Producers Ass'n v. Hunter*, 46 B.R. 214, 216 (N.D.Ohio 1985). When only a simple application of well-settled law is required withdrawal is not mandatory. *See In re CM Holdings, Inc.*, 221 B.R. 715, 721 (D.Del.1998). Consideration of the United States Constitution may mandate withdrawal. *See In re Avtex Fibers–Front Royal, Inc.*, No. 90–0510, 1991 WL 25460, *2 (E.D.Pa. Feb.26, 1991) (holding that "[t]he ultimate non-Code law is the United States Constitution, and consideration of that law mandates withdrawal.").

■ Camden asserts that its constitutional claim, that an Art. I bankruptcy court cannot deprive a debtor of its voluntary right to discontinue a civil court proceeding initiated by that party, requires withdrawal. As explained above under the discussion of Camden's appeal, a debtor has no constitutionally protected right to dismiss a voluntary Chapter 11 proceeding. Therefore, this action does not require complex interpretation of non-title 11 federal law. Rather, this case requires simple application of well settled law and

therefore, mandatory withdrawal is not implicated in this case.[12]

■ Section 157(d) also provides for discretionary withdrawal: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." *Id.* Camden asserts that cause for permissive withdrawal exists because of the bankruptcy court's apparent bias against Camden. Because I concluded above that the bankruptcy court did not abuse its discretion in declining to dismiss Camden's voluntary Chapter 11 case, I will not exercise my discretion to allow permissive withdrawal.

## C. Camden's motion to strike the brief of IMI

■ Camden moves to strike the brief of IMI because IMI settled its claims against Camden and released all further claims against Camden on June 2, 1999 pursuant to a settlement agreement between the parties (the "Settlement Agreement"). IMI's brief joins the arguments of the UST and objects to Camden's assertion that IMI lacked standing to support conversion, rather than dismissal, of the Chapter 11 case. IMI claims that it has a continuing interest in assuring that its Settlement Agreement with Camden is performed, particularly Camden's responsibility for cleaning up after its manufacturing operations and Camden's responsibility for environmental claims. IMI therefore, asserts that it is a "party in interest" pursuant to § 1112(b). IMI contends that it has sufficient stake in the litigation to seek to uphold the Settlement Agreement by asserting that it would be in the best interest of the estate for Camden's remediation obligations to be overseen and administered by a Chapter 7 Trustee. IMI cites

12. Because I find that resolution of the proceeding does not require consideration of both the Bankruptcy Code and of non-bankruptcy federal statutes regulating interstate commerce, I will not address the other two prerequisite for mandatory withdrawal of the reference ((1) the person seeking withdrawal must be a party to the proceeding and (2) the motion to withdraw the reference must be timely filed).

paragraph eight of the Settlement Agreement as a justification for IMI's standing:

> Camden agrees and acknowledges that it, and not IMI, is responsible for claims, orders, decrees, damages, debts, penalties, cleanup or inspection costs, and any related costs and expenses relating to Camden's past, present or future manufacture of goods and use of Camden's facilities, including but not limited to any claims relating to the environment, hazardous materials and any actions taken by the governmental body or agency with jurisdiction.

Camden Mot. at Ex. A.

The phrase "party in interest" is not defined in § 1112(b). Section 1109(b) of the Bankruptcy Code provides a non-exclusive list of "parties of interest," "including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee ...". *Id.*, *see also* 11 U.S.C. § 102(3) (stating that " 'includes' and 'including' are not limiting"). The Third Circuit in *In re Amatex Corp.*, 755 F.2d 1034 (3rd Cir.1985), evaluated if presently unknown future claimants in asbestos litigation may be parties in interest pursuant to § 1109(b). *See id.* at 1041–42. The Third Circuit held that "courts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." *Id.* at 1042. The court agreed with the holding in *In re Johns–Manville Corp.*, 36 B.R. 743 (Bankr.S.D.N.Y.1984) where Judge Lifland reasoned that § 1109(b) is "certainly broad enough to embrace the interests of future claimants ... Future claimants are undeniably parties in interest to these reorganization proceedings pursuant to the broad, flexible definition of that term ... [t]he drafting of 'party in interest' as an elastic concept was designed for just this kind [of] situation." *Id.* at 748–49. The Third Circuit concluded that "future claimants are sufficiently affected by the reorganization proceedings to require

some voice in them." *In re Amatex*, 755 F.2d at 1042. Applying the flexible and broad definition of a "party in interest" as delineated by the Third Circuit, I conclude that IMI's interest in the liquidation of Camden's estate is sufficient to warrant its brief in this appeal. Therefore, I will deny Camden's motion to strike the brief of IMI.

## ORDER

**AND NOW**, this ___ day of **March, 2000**, I **ORDER** that:

(1) The ruling of the bankruptcy court is **AFFIRMED**.

(2) The debtor's motion to withdraw the reference (docket entry # 3) is **DENIED**.

(3) The debtor's motion to strike the brief of Israel Military Industries, Ltd. (docket entry # 12) is **DENIED**.